# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TPC GROUP INC., *et al.*, | Case No. 22-10493 (CTG) |
| Debtors.[1] | Jointly Administered |

## SCHEDULE OF ASSETS AND LIABILITIES FOR TEXAS OLEFINS DOMESTIC INTERNATIONAL SALES CORPORATION, (CASE NO. 22-10498)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: TPC Group Inc. (3618); TPC Holdings, Inc. (7380); TPC Group LLC (8313); Texas Butylene Chemical Corporation (7440); Texas Olefins Domestic International Sales Corporation (4241); TPC Phoenix Fuels LLC (9133); Port Neches Fuels, LLC (1641); and TP Capital Corp. (6248). Each Debtor's corporate headquarters and mailing address is 500 Dallas St., Suite 2000, Houston, Texas 77002.

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **TPC GROUP INC.,** *et al.,*[1] | § | **Case No. 22-10493 (CTG)** |
| | § | |
| **Debtors.** | § | **(Jointly Administered)** |

# GLOBAL NOTES AND STATEMENTS OF LIMITATIONS, METHODOLOGY, AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

TPC Group Inc. ("***TPC***") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "***Debtors***"), are filing their respective Schedules of Assets and Liabilities (the "***Schedules***") and Statements of Financial Affairs (the "***Statements***," and together with the Schedules the "***Schedules and Statements***") in the United States Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***"), pursuant to section 521 of title 11 of the United States Code (the "***Bankruptcy Code***"), and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").

These Global Notes and Statements of Limitations, Methodology, and Disclaimer Regarding the Debtors' Schedules and Statements (collectively, the "***Global Notes***") pertain to, are incorporated by reference in, and comprise an integral part of all of the Schedules and Statements. The Global Notes are in addition to the specific notes set forth below with respect to the Schedules and Statements (the "***Specific Notes***," and, together with the Global Notes, the "***Notes***"). These Notes should be referred to, and referenced in connection with, any review of the Schedules and Statements.

The Debtors' management prepared the Schedules and Statements with the assistance of their advisors and other employees. The Schedules and Statements are unaudited and subject to potential adjustment. In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of preparation. The Debtors' management team and advisors have made reasonable efforts to ensure that the Schedules and Statements are as accurate and complete as possible under the circumstances; however, subsequent information or discovery may result in material changes to the Schedules and Statements and errors or omissions

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: TPC Group Inc. (3618); TPC Holdings, Inc. (7380); TPC Group LLC (8313); Texas Butylene Chemical Corporation (7440); Texas Olefins Domestic International Sales Corporation (4241); TPC Phoenix Fuels LLC (9133); Port Neches Fuels, LLC (1641); and TP Capital Corp. (6248). Each Debtor's corporate headquarters and mailing address is 500 Dallas St., Suite 2000, Houston, Texas 77002.

may exist. Notwithstanding any such discovery, new information, or errors or omissions, the Debtors do not undertake any obligation or commitment to update the Schedules and Statements.

The Debtors reserve all rights to amend or supplement the Schedules and Statements and these Notes from time to time, in all respects, as may be necessary or appropriate, including the right to dispute or otherwise assert offsets or defenses to any claim reflected on the Schedules and Statements as to amount, liability, classification, identity of Debtor, or to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated." Furthermore, nothing contained in the Schedules, Statements, or Notes shall constitute a waiver of any of the Debtors' rights or an admission with respect to their chapter 11 cases, including any issues involving objections to claims, substantive consolidation, equitable subordination, defenses, characterization or recharacterization of contracts and leases, assumption or rejection of contracts and leases under the provisions of chapter 3 of the Bankruptcy Code, causes of action arising under the provisions of chapter 5 of the Bankruptcy Code, or any other relevant applicable laws to recover assets or avoid transfers.

Mr. Bart de Jong, the Debtors' Chief Financial Officer, has signed each of the Schedules and Statements. Mr. de Jong is an authorized signatory for each of the Debtors. In reviewing and signing the Schedules and Statements, Mr. de Jong necessarily has relied upon the efforts, statements, and representations of various personnel employed by the Debtors and their advisors. Mr. de Jong has not (and could not have) personally verified the accuracy of each statement and representation contained in the Schedules and Statements, including statements and representations concerning amounts owed to creditors, classification of such amounts, and creditor addresses.

## GLOBAL NOTES AND OVERVIEW OF METHODOLOGY

1. **Reservation of Rights**. Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, inadvertent errors or omissions may exist. The Debtors reserve the right to dispute, or to assert setoff or other defenses to, any claim reflected in the Schedules and Statements as to amount, liability, and classification. The Debtors also reserve all rights with respect to the values, amounts, and characterizations of the assets and liabilities listed in the Schedules and Statements. Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph. Notwithstanding the foregoing, the Debtors shall not be required to update the Schedules and Statements except as may be required by applicable law.

2. **Description of the Cases**. On June 1, 2022 (the "***Petition Date***"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Debtors' chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Rule 1015-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware.

On June 14, 2024, the United States Trustee for Region 3 appointed a committee of unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket No. 270]. No trustee or examiner has been appointed in these chapter 11 cases.

4.    **Basis of Presentation**.  For financial reporting purposes, the Debtors generally prepare consolidated financial statements, which include information for TPC Group, Inc. and its Debtor and non-Debtor affiliates.  The Schedules and Statements are unaudited and reflect the Debtors' reasonable efforts to report certain financial information of each Debtor on an unconsolidated basis.  These Schedules and Statements neither purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("***GAAP***"), nor are they intended to be fully reconciled with the financial statements of each Debtor. The Debtors used reasonable efforts to attribute the assets and liabilities, certain required financial information, and various cash disbursements to each particular Debtor entity.  Accordingly, the Debtors reserve all rights to supplement and amend the Schedules and Statements in this regard, including with respect to reallocation of assets or liabilities to any particular entity.

5.    **"As Of" Information Date.**  The asset information provided herein represents the data as of the close of business on May 31, 2022, except as otherwise noted. The liability information provided herein represents the data as of the Petition Date, except as otherwise noted. The Schedules and Statements reflect the Debtors' best effort to allocate the assets, liabilities, receipts, and expenses to the appropriate Debtor entity "as of" such dates.  In certain instances, the Debtors may have used estimates or pro-rated amounts where actual data as of the aforementioned dates was not available.

6.    **Accuracy**.  The financial information disclosed herein was not prepared in accordance with federal or state securities laws or other applicable non-bankruptcy law or in lieu of complying with any periodic reporting requirements thereunder.  Persons and entities trading in or otherwise purchasing, selling, or transferring the claims against or equity interests in the Debtors should evaluate this financial information in light of the purposes for which it was prepared.  The Debtors are not liable for and undertake no responsibility to indicate variations from securities laws or for any evaluations of the Debtors based on this financial information or any other information.

7.    **Net Book Value of Assets**.  Except as otherwise specifically noted, each asset and liability of each Debtor is shown on the basis of net book value of the asset or liability in accordance with such Debtor's accounting books and records. Therefore, unless otherwise specifically noted, the Schedules and Statements are not based upon any estimate of the current market values of the Debtors' assets and liabilities, which may not correspond to book values. It would be cost prohibitive and unduly burdensome to obtain current market valuations of the Debtors' property interests.  Except as otherwise noted, the Debtors' assets are presented, in detail, as they appear on the Debtors' accounting subledgers. As such, the detail may include error corrections and value adjustments (including negative values or multiple line items for an individual asset).

For financial reporting purposes, TPC prepares consolidated financial statements.  Unlike the consolidated financial statements, these Schedules and Statements, except as indicated

herein, reflect the assets and liabilities of each Debtor, including intercompany accounts which would be eliminated in TPC's consolidated financial statements. Accordingly, combining the assets and claims set forth in the Schedules and Statements of the Debtors would result in amounts that would be substantially different from financial information for TPC and its respective consolidated subsidiaries that would be prepared under GAAP. Therefore, these Schedules and Statements do not purport to represent financial statements prepared in accordance with GAAP, nor are they intended to reconcile to the financial statements prepared by TPC.

Book values of assets prepared in accordance with GAAP generally do not reflect the current performance of the assets and may differ materially from the actual value and/or performance of the underlying assets. Because the book values of assets may materially differ from their fair market values, some assets are listed in undetermined amounts as of May 31, 2022. Assets that have been fully depreciated or fully amortized, or were expensed for GAAP accounting purposes, have no net book value and are, therefore, not included in the Schedules and Statements.

8. **Estimates and Assumptions**. The preparation of the Schedules and Statements required the Debtors to make certain estimates and assumptions that affected the reported amounts of assets and liabilities, the disclosures of contingent assets and liabilities, and the reported amounts of revenues and expenses. Actual results could differ materially from these estimates.

9. **Liabilities**. The Debtors have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between the prepetition and postpetition periods may change. Accordingly, the Debtors reserve all of their rights to amend, supplement, or otherwise modify the Schedules and Statements, as is necessary or appropriate.

The liabilities listed on the Schedules do not reflect any analysis of claims under section 503(b)(9) of the Bankruptcy Code. Accordingly, the Debtors reserve all of their rights to dispute or challenge the validity of any asserted claims under section 503(b)(9) of the Bankruptcy Code or the characterization of the structure of any such transaction or any document or instrument related to any creditor's claim. Although there are multiple holders of debt under the Debtors' prepetition funded indebtedness, only the administrative agent and indenture trustee, as applicable, have been listed in the Schedules.

10. **Application of Vendor Credits.** In the ordinary course of their businesses, the Debtors apply credits against amounts otherwise due to vendors (the "***Vendor Credits***"). The Vendor Credits arise because, among other matters, (i) materials ordered and paid for may not be delivered, (ii) materials delivered may be damaged or unusable, and (iii) a vendor provided volume rebates and cash discounts. Certain of the Vendor Credits are subject to change. Vendor claims are listed at the amounts entered on the Debtors' books and records, which

may or may not reflect credits or allowances due from such creditors to the Debtors. The Debtors reserve all of their rights with respect to such credits and allowances.

11. **Claims**. The Debtors have not included "non-cash" accruals, i.e. accruals to recognize expense or liability over multiple periods where no specific obligation to perform is established, such as accruals to equalize lease payments, in the Schedules and Statements.

The Bankruptcy Court has authorized the Debtors, among other matters, to (i) pay certain prepetition wages, salaries, employee benefits and other related obligations, (ii) pay certain prepetition sales, use and other taxes, and (iii) pay certain vendors and lienholders. While the Debtors have made their best efforts to reflect the claims, by vendor, net of these various authorized payments as well as the Vendor Credits discussed above, the actual unpaid claims of creditors that may be allowed in these chapter 11 cases may differ from the amounts set forth in the Schedules and Statements. Moreover, the Debtors have not attempted to reflect any alleged recoupments in the claims of utility companies or other parties holding prepetition deposits that may assert (or have asserted) a recoupment right.

The Debtors reserve all rights (i) to amend or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including, without limitation, the right to amend the Schedules and Statements with respect to claim description or designation or the Debtors against which the claim is asserted; (ii) to dispute or otherwise to assert offsets or defenses to any claim reflected in the Schedules and Statements as to amount, liability, priority, status, or classification; and (iii) to designate subsequently any claim as "disputed," "contingent," or "unliquidated"; or to object to the extent, validity, enforceability, priority, or avoidability of any claim. Any failure to designate a claim in the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such claim or amount is not "disputed," "contingent," or "unliquidated." Listing a claim does not constitute an admission of liability by the Debtors against which the claim is listed or against any of the Debtors. Furthermore, nothing contained in the Schedules and Statements shall constitute a waiver of rights with respect to the Debtors' chapter 11 cases, including, without limitation, issues involving claims, substantive consolidation, defenses, equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers.

The claims listed on the Schedules do not reflect any analysis of claims under section 503(b)(9) of the Bankruptcy Code. Accordingly, the Debtors reserve all of their rights to dispute or challenge the validity of any asserted claims under section 503(b)(9) of the Bankruptcy Code or the characterization of the structure of any such transaction or any document or instrument related to any creditor's claim.

12. **Employee Claims.** The Bankruptcy Court entered a final order granting authority, but not requiring, the Debtors to pay prepetition employee wages, salaries, benefits and other related obligations. With the exception of any prepetition severance and paid time off obligations that are still owing under the Debtors' policies and applicable non-bankruptcy law, as applicable, the Debtors currently expect that most prepetition employee claims for

wages, salaries, benefits and other related obligations either have been paid or will be paid in the ordinary course of business and, therefore, the Schedules and Statements do not include such claims. The Debtors have not listed their regular payroll disbursements and employee expense reimbursements in Question 3 for the Statements.

13. **Excluded Assets and Liabilities**. The Debtors have excluded certain categories of assets and liabilities from the Schedules and Statements, including, without limitation, accrued salaries, employee benefit accruals, tax accruals, right of use lease assets, assets related to the amortization of intangibles, and assets with a net book value of zero. The Debtors have also excluded rejection damage claims of counterparties to executory contracts and unexpired leases that may or may not be rejected, to the extent such damage claims exist. For confidentiality reasons, the Debtors have not listed individual customer accounts receivable information. Total accounts receivable information for each Debtor has been listed as of May 31, 2022. In addition, certain immaterial assets and liabilities may have been excluded.

14. **Litigation.** Certain litigation actions (collectively, the "***Litigation Actions***") reflected as claims against a particular Debtor may relate to one or more of the other Debtors. The Debtors made reasonable efforts to accurately record the Litigation Actions in the Schedules and Statements of the Debtor that is the party to the Litigation Action. The inclusion of any Litigation Action in the Schedules and Statements does not constitute an admission by the Debtors of liability, the validity of any Litigation Action or the amount of any potential claim that may result from any claims with respect to any Litigation Action, or the amount and treatment of any potential claim resulting from any Litigation Action currently pending or that may arise in the future. As the Debtors continue to operate their business, additional Litigation Actions may arise as a result thereof. Accordingly, the Debtors reserve all of their rights to amend, supplement, or otherwise modify the Schedules and Statements, as is necessary or appropriate.

15. **Umbrella Agreements**. Certain contracts and leases listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors. Where relevant, such agreements have been listed in the Schedules and Statements of the Debtor entity that signed the original umbrella or master agreement. Other Debtors, however, may be liable together with such Debtor on account of such agreements and the Debtors reserve all rights to amend the Schedules and Statements to reflect changes regarding the liability of the Debtors with respect to such agreements, if appropriate.

16. **Guarantees**. The Debtors have made reasonable efforts to locate and identify guarantees and other secondary liability claims (collectively, the "***Guarantees***") in each of the executory contracts, unexpired leases, secured financings, debt instruments and other such agreements to which any Debtor is a party. Where Guarantees have been identified, they have been included in the relevant Schedule for the Debtor or Debtors affected by such Guarantees. The Debtors have placed the Guarantees on Schedule H for both the primary obligor and the guarantor of the relevant obligation. It is possible that certain Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments and other such agreements may have been inadvertently omitted. The Debtors

reserve their rights to amend the Schedules to the extent additional Guarantees are identified or such Guarantees are discovered to have expired or be unenforceable. Additionally, failure to list any Guarantees in the Schedules and Statements, including in any future amendments to the Schedules and Statements, shall not affect the enforceability of any Guarantees not listed.

17. **Duplication**.  Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in multiple parts of the Statements and Schedules.  To the extent these disclosures would be duplicative, the Debtors have determined to only list such assets, liabilities, and prepetition payments once.

18. **Claims Description**.  Schedules D and E/F permit each of the Debtors to designate a claim as "disputed," "contingent," and/or "unliquidated."  The Debtors reserve all of their rights to dispute, or assert offsets or defenses to, any claim reflected on their respective Schedules and Statements on any grounds, including liability or classification.  Additionally, the Debtors expressly reserve all of their rights to subsequently designate such claims as "disputed," "contingent" or "unliquidated."

19. **Causes of Action**.  Despite making commercially reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action or potential causes of action against third-parties as assets in the Schedules and Statements, including, without limitation, causes of actions arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers.  The Debtors reserve all of their rights with respect to any cause of action (including avoidance actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (collectively, "***Causes of Action***") they may have, and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any claims or Causes of Action or in any way prejudice or impair the assertion of such claims or Causes of Action.

20. **Confidentiality**.  There may be instances where certain information was not included or redacted due to the nature of an agreement between a Debtor and a third party, concerns about the confidential or commercially sensitive nature of certain information, or to protect the privacy of an individual.

21. **Employee Addresses.**  Current employee and director addresses have been reported as the Debtors' business address throughout the Schedules and Statements, where applicable.

22. **Recharacterization.**  Listing (i) a claim on Schedule D as "secured," (ii) a claim on Schedule E/F as "priority," (iii) a claim on Schedule E/F as "unsecured," or (iv) a contract on Schedule G as "executory" or "unexpired," does not constitute an admission by the

Debtors of the legal rights of the claimant or a waiver of the Debtors' rights to re-characterize or reclassify such claims or contracts or to setoff of such claims. Notwithstanding the Debtors' commercially reasonable efforts to characterize, classify, categorize, or designate properly certain claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements, the Debtors may nevertheless have improperly characterized, classified, categorized, designated, or omitted certain items due to the complexity and size of the Debtors' business. Accordingly, the Debtors reserve all of their rights to recharacterize, reclassify, recategorize, redesignate, add, or delete items reported in the Schedules and Statements at a later time as is necessary or appropriate as additional information becomes available, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition. Disclosure of information in one or more Schedules, one or more Statements, or one or more exhibits or attachments to the Schedules and Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits, or attachments.

23. **Insiders.** For purposes of the Schedules and Statements, the Debtors defined "insiders" as such term is defined in section 101(31) of the Bankruptcy Code. Persons listed as "insiders" have been included for informational purposes only and the inclusion of them in the Schedules and Statements shall not constitute an admission that such persons are insiders for purposes of section 101(31) of the Bankruptcy Code. Moreover, the Debtors do not take any position with respect to: (i) any insider's influence over the control of the Debtors; (ii) the management responsibilities or functions of any such insider; (iii) the decision making or corporate authority of any such insider; or (iv) whether the Debtors or any such insider could successfully argue that he or she is not an "insider" under applicable law or with respect to any theories of liability or for any other purpose.

24. **Intellectual Property Rights.** Exclusion of any intellectual property shall not be construed as an admission that such intellectual property rights have been abandoned, terminated, assigned, expired by their terms, or otherwise transferred pursuant to a sale, acquisition, or other transaction.

25. **Summary of Significant Reporting Policies**. The following is a summary of significant reporting policies:

- Underdetermined Amounts. The description of an amount as "unknown," "TBD" or "undetermined" is not intended to reflect upon the materiality of such amount.

- Totals. All totals that are included in the Schedules and Statements represent totals of all known amounts. To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total.

- Paid Claims. The Debtors were authorized (but not directed) to pay certain outstanding prepetition claims pursuant to various orders entered by the Bankruptcy Court. The Debtors reserve all of their rights to amend or supplement the Schedules and Statements or take other action as is necessary or appropriate to avoid

overpayment of, or duplicate payments for, any such liabilities.  Please see the notes to Schedule E/F for any additional information.

- <u>Liens</u>.  Property and equipment listed in the Schedules and Statements are presented without consideration of any liens that may attach (or have attached) to such property and equipment.

26. **<u>Currency</u>**.  Unless otherwise indicated, all monetary amounts are stated in U.S. dollars.

27. **<u>Intercompany Payables and Receivables</u>**.  Intercompany receivables/payables are set forth on Schedules A/B and E/F, respectively.  The listing by the Debtors of any account between a Debtor and another affiliate, including between the Debtor and any disregarded or non-debtor affiliate, is a statement of what appears in the Debtors' books and records and does not reflect any admission or conclusion of the Debtors regarding the allowance, classification, characterization, validity, or priority of such account.  The Debtors take no position in these Schedules and Statements as to whether such accounts would be allowed as a claim, an interest, or not allowed at all.  The Debtors and all parties in interest reserve all rights with respect to such accounts.  The Debtors reserve all rights to recharacterize, reprioritize, reclassify, recategorize or redesignate intercompany accounts reported in the Schedules and Statements

28. **<u>Inventories, Property and Equipment</u>**.  Inventories consist of material, supplies, raw materials and finished goods inventory.  Finished goods inventories are valued at the lower of cost or net realizable value and all other inventory is carried at average cost.  Finished goods inventory costs include labor, supplies, depletion of raw materials, operating overhead and transportation costs incurred prior to the transfer of title to customers.  Property, plant, equipment is recorded at cost.  Property, plant, and equipment are aggregated in the Debtors' books and records and cannot be segregated easily into the categories required by the Schedules and Statements.  All inventories, as well as all property and equipment, are presented without consideration of any statutory or consensual liens.

29. **<u>Effect of "First Day" Orders</u>**.  The Bankruptcy Court has authorized the Debtors to pay various outstanding prepetition claims including certain payments to employees, critical vendors, lien holders and taxing authorities.  Where the Schedules and Statements list creditors and set forth the Debtors' scheduled amount of such claims, such scheduled amounts reflect amounts owed as of the Petition Date, adjusted for any postpetition payments made as of June 1, 2022 on account of such claims pursuant to the authority granted to the Debtors by the Bankruptcy Court.  To the extent any further adjustments are necessary for any additional postpetition payments made after June 1, 2022 on account of such claims pursuant to the authority granted to the Debtors by the Bankruptcy Court, such adjustments have not been included in the Schedules and Statements unless otherwise noted on the applicable Schedule or Statement.  Estimates of claims set forth in the Schedules and Statements may not reflect assertions by the Debtors' creditors of a right to have such claims paid or reclassified under the Bankruptcy Code or orders of the Bankruptcy Court.

30. **Setoffs**. The Debtors periodically incur certain setoffs in the ordinary course of business. Setoffs in the ordinary course can result from various items including, but not limited to, pricing discrepancies, returns, warranties, refunds, negotiations and/or disputes between Debtors and their customers regarding regulatory or governmental impositions costs incurred by Debtors, and other disputes between the Debtors and their customers and/or suppliers. These normal setoffs are consistent with the ordinary course of business in the Debtors' industry and can be particularly voluminous, making it unduly burdensome and costly for the Debtors to list such ordinary course setoffs. Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs are not independently accounted for, and as such, are or may be excluded from the Debtors' Schedules and Statements.

31. **Global Notes Control**. In the event that the Schedules and Statements differ from these Global Notes, the Global Notes shall control.

## SPECIFIC DISCLOSURES WITH RESPECT TO THE DEBTORS' SCHEDULES

**Schedules Summary**. Except as otherwise noted, the asset information provided herein represents the asset data of the Debtors as of May 31, 2022, and liability information provided herein represents the liability data of the Debtors as of the Petition Date.

For financial reporting purposes, the Debtors ordinarily prepare consolidated financial statements. Unlike the consolidated financial statements, the Schedules reflect the assets and liabilities of each Debtor on a nonconsolidated basis, except where otherwise indicated. Accordingly, the totals listed in the Schedules will likely differ, at times materially, from the consolidated financial reports prepared by the Debtors for financial reporting purposes or otherwise.

The Schedules do not purport to represent financial statements prepared in accordance with GAAP, nor are they intended to be fully reconciled with the financial statements of each Debtor. Additionally, the Schedules contain unaudited information that is subject to further review and potential adjustment and reflect the Debtors' reasonable best efforts to report the assets and liabilities of each Debtor on an unconsolidated basis. Moreover, given, among other things, the uncertainty surrounding the collection and ownership of certain assets and the valuation and nature of certain liabilities, to the extent that a Debtor shows more assets than liabilities, this is not an admission that the Debtor was solvent as of the Petition Date or at any time before the Petition Date. Likewise, to the extent a Debtor shows more liabilities than assets, this is not an admission that the Debtor was insolvent as of the Petition Date or at any time before the Petition Date.

As part of their financial statement due diligence process, the Debtors, from time to time, analyze the book values of their assets to determine, with respect to any of their assets, whether all or part of an asset value would be impaired in accordance with GAAP. Where book values of assets have been reduced to zero, such assets have not been included in the Schedules.

**Schedule A/B, Parts 1 and 2 – Cash and Cash Equivalents; Deposits and Prepayments**. Details with respect to the Debtors' cash management system and bank accounts are provided in the Debtors' Cash Management Motion and the interim order of the Bankruptcy Court granting the Cash Management Motion [Docket No. 9].

**Schedule A/B, Part 9 – Real Property**.  For those Debtors that own real property, such owned real estate is reported, except where otherwise noted, at book value.  The Debtors may have listed certain assets as real property when such assets are in fact personal property, or the Debtors may have listed certain assets as personal property when such assets are in fact real property.  Buildings and land improvements are listed on Schedule A/B, Part 9, independent of whether the real property to which the building or land improvement is connected is Debtor-owned property.  The Debtors reserve all of their rights to recategorize and/or recharacterize such assets holdings to the extent the Debtors determine that such holdings were improperly listed.

**Schedule A/B, Part 11 – All Other Assets**.  Dollar amounts are presented net of impairments and other adjustments.

In the ordinary course of their businesses, the Debtors may have accrued, or may subsequently accrue, certain rights to counter-claims, cross-claims, setoffs, credits, rebates, or refunds with their customers and suppliers, or potential warranty claims against their suppliers.  Additionally, certain of the Debtors may be party to pending litigation in which such Debtor has asserted, or may assert, claims as a plaintiff or counter-claims and/or cross-claims as defendant.  Because such claims are unknown to the Debtors and not quantifiable as of the Petition Date, they are not listed on Schedule A/B, Part 11.

The Debtors accumulated NOLs in fiscal years 2014 through 2020. For fiscal year 2021, the Debtors used a portion of those NOLs to cover taxes owed for that year. The NOLs for each fiscal year shown under Part 11, Question 72 are net of any used portion of the NOLs, not the original NOL that fiscal year.

The Debtors are pursuing claims under certain insurance policies related to the November 27, 2019 Port Neches incident. Such claims have not been quantified on the Schedules.  More information on such claims is available in Paragraph 52 of the Declaration of Robert A. Del Genio in Support of Debtors' Chapter 11 Petitions and First Day Motions [Docket No. 27].  See Exhibit 1 for associated insurance policies.

**Schedule D – Creditors Who Have Claims Secured by Property**.  Except as otherwise agreed pursuant to a stipulation, agreed order, or general order entered by the Bankruptcy Court, the Debtors reserve their right to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D of any Debtor.  Moreover, although the Debtors may have scheduled claims of various creditors as secured claims, the Debtors reserve their right to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument (including any intercompany agreement) related to such creditor's claim.  In certain circumstances, a Debtor may be a co-obligor or guarantor with respect to the scheduled claims of other Debtors, and no claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities.  The descriptions provided on Schedule D are intended only as a summary.  Reference to the applicable loan agreements and related documents is necessary for a complete description of

the collateral and the nature, extent and priority of any liens. Nothing in Schedule D and/or the Global Notes shall be deemed a modification or interpretation of the terms of such agreements.

Except as specifically stated herein, utility companies and other parties that may hold security deposits have not been listed on Schedule D. The Debtors reserve all of their rights, claims and causes of action with respect to claims associated with any contracts and agreements listed on Schedule D or Schedule G, including the right to dispute or challenge the characterization or the structure of any transaction, document or instrument (including any intercompany agreement) related to a creditor's claim. Nothing herein shall be construed as an admission by the Debtors of the legal rights of the claimant or a waiver of the Debtors' right to recharacterize or reclassify such claim or contract.

The Debtors have not included on Schedule D parties that may believe such claims are secured through setoff rights or inchoate statutory lien rights. Although there are multiple parties that hold a portion of the debt included in the secured facilities, only the administrative agents have been listed for purposes of Schedule D.

TPC has been granted postpetition financing pursuant to the *Interim Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 147] (Final Orders are pending). All of the other Debtors guarantee TPC's obligations under the DIP Facility.

The Secured ABL Facility's collateral listed in Schedule D, Part 1 reflects cash, inventory, and accounts receivable balances as of the May 31, 2022 balance sheet. The claim amount listed for both secured and unsecured notes in Schedule D, and in Schedule E/F, includes principal and interest as of the Petition Date.

**Schedule E/F, Part 1 – Creditors With Priority Unsecured Claims**. Pursuant to the *Interim Order (I) Authorizing Debtors to Pay Certain Prepetition Taxes and Assessments and (II) Granting Related Relief* [Docket No. 116] (the "***Interim Taxes Order***"), the Debtors have been granted the authority to pay certain tax liabilities that accrued prepetition. Accordingly, any priority unsecured claim based upon prepetition tax accruals that have been paid pursuant to the Interim Taxes Order are not listed on Schedule E/F. Certain of the tax claims may be subject to on-going audits, and the Debtors are otherwise unable to determine with certainty the amount of many, if not all, of the tax claims listed on Schedule E/F. Therefore, the Debtors have listed all such claims as undetermined in amount, pending final resolution of on-going audits or outstanding issues.

The Debtors believe that all of the employee claims entitled to priority under the Bankruptcy Code were or will be paid pursuant to the *Interim Order (I) Authorizing Debtors to (A) Pay Prepetition Wages, Salaries, Reimbursable Expenses, and Other Obligations on Account of Compensation and Benefits Programs and (B) Continue Compensation and Benefits Programs and (II) Granting Related Relief* [Docket No. 108]. Accordingly, no employee-related claims by and against the Debtors for prepetition amounts due have been included in Schedule E/F.

The listing of a claim on Schedule E/F, Part 1, does not constitute an admission by the Debtors that such claim or any portion thereof is entitled to priority status. The Debtors reserve the right to assert that any claim listed on Schedule E/F does not constitute a priority claim under the Bankruptcy Code.

**Schedule E/F, Part 2 – Creditors With Non-Priority Unsecured Claims**. The Debtors have made reasonable efforts to report all general unsecured claims against the Debtors on Schedule E/F, Part 2 based upon the Debtors' existing books and records. The claims of individual creditors for among other things, products, goods, or services are listed as either the lower of the amounts invoiced by the creditor or the amounts entered on the Debtors' books and records, and may not reflect credits or allowances due from such creditors to the Debtors. The Debtors reserve all rights with respect to any such credits and allowances including the right to assert claims objections and/or setoffs. The claims listed on Schedule E/F, Part 2, arose or were incurred on various dates. In certain instances, the date on which a claim arose is an open issue of fact. While commercially reasonable efforts have been made, determining the date upon which each claim in Schedule E/F was incurred or arose would be unduly burdensome and cost prohibitive and, therefore, the Debtors do not list a date for every claim listed on Schedule E/F.

Schedule E/F, Part 2, reflects certain prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption or assumption and assignment of an executory contract or unexpired lease. In addition, Schedule E/F, Part 2, does not include all claims that may arise in connection with the rejection of any executory contracts and unexpired leases that may be or have been rejected.

Schedule E/F, Part 2, does not include certain deferred charges, deferred liabilities, accruals or general reserves. Such amounts are general estimates of liabilities and do not represent specific claims as of the Petition Date; however, they are reflected on the Debtors' books and records as required in accordance with GAAP.

Schedule E/F contains information regarding pending litigation involving the Debtors. In certain instances, the Debtor that is subject of the litigation is uncertain or undetermined. Where the named defendant is "TPC Group Inc." plus "et al.," the Debtors have listed such claim on Schedule E/F of TPC. However, to the extent that litigation involving a particular Debtor has been identified, information regarding that litigation is contained in Schedule E/F for that Debtor. The amounts for these potential claims are listed as "undetermined" and are marked as contingent, unliquidated, and disputed in the Schedules and Statements.

**Schedule G – Executory Contracts and Unexpired Leases**. The businesses of the Debtors are complex. Although the Debtors' existing books, records, financial systems, and contracts management systems have been relied upon to identify and schedule executory contracts for each of the Debtors and reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors, omissions, or overinclusion may have occurred. The Debtors reserve all of their rights to dispute the validity, status or enforceability of any contracts, agreements, or leases set forth on Schedule G and to amend or supplement such Schedule, as necessary. The contracts, agreements, and leases listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers,

estoppels, certificates, letters, memoranda and other documents, instruments and agreements that may not be listed on Schedule G, despite the Debtors' use of reasonable efforts to identify such documents. In some cases, the same supplier or provider appears multiple times on Schedule G. This multiple listing is intended to reflect distinct agreements between the applicable Debtor and such supplier or provider. Certain of the real property leases listed on Schedule G may contain renewal options, guarantees of payments, options to purchase, rights of first refusal, rights to lease additional space and other miscellaneous rights. Such rights, powers, duties and obligations are not separately set forth on Schedule G. Certain of the agreements listed on Schedule G may be in the nature of conditional sales agreements or secured financings. The presence of a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease.

The Debtors have included only contracts and agreements to which a Debtor is a party. Schedule G does not include contracts or agreements in which payments were made on any of the Debtors' behalf for administrative convenience or as a result of the Debtors' cash management system. The Debtors have included certain interests in real property such as easements, rights of way, and other similar interests on Schedule G. The listing of such real property interests on Schedule G as "executory" does not constitute an admission by a Debtor that any such contract is executory. The Debtors reserve all rights to recategorize and/or recharacterize their interests in such real property at a later date, as necessary. The Debtors are continuing their review of all relevant documents and expressly reserve their right to amend all Schedules at a later time as necessary and/or to challenge the classification of any agreement as an executory contract or unexpired lease in any appropriate filing. The Debtors further reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on Schedule G, including the right to dispute or challenge the characterization or the structure of any transaction, document, or instrument (including any intercompany agreement) related to a creditor's claim.

In addition, the Debtors may have entered into various other types of agreements in the ordinary course of business, such as, supplemental agreements, amendments/letter agreements, title agreements, and confidentiality agreements. Such documents may not be set forth on Schedule G. Certain of the contracts, agreements and leases listed on Schedule G may have been entered into by more than one of the Debtors. Further, the specific Debtor obligor to certain of the executory contracts could not be specifically ascertained in every circumstance. In such cases, the Debtors made their best efforts to determine the correct Debtors' Schedule G on which to list such executory contract or unexpired lease. Certain of the executory contracts may not have been memorialized and could be subject to dispute. Each unexpired lease listed in Schedule G may include one or more ancillary documents, including but not limited to any underlying assignment and assumption agreements, amendments, supplements, full and partial assignments, renewals and partial releases. Executory contracts that are oral in nature, if any, have not been included on Schedule G. Schedule G does not constitute an admission that any such contract or agreement is an executory contract or unexpired lease. The Debtors reserve all of their rights, claims and causes of action with respect to the contracts and agreements listed on Schedule G, including the right to dispute or challenge the characterization or the structure of any transaction, document or instrument.

**Schedule H – Co-Debtors**. In the ordinary course of their business, the Debtors may be involved in pending or threatened litigation and claims arising out of certain ordinary business transactions.

These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross claims and counter-claims against other parties. Due to the volume of such claims, and because all such claims are contingent, unliquidated, and disputed, and listed elsewhere in the Schedules and Statements, such claims have not been set forth individually on Schedule H.

Schedule H reflects Guarantees, if any, by various Debtors of obligations of related affiliates. The Debtors may not have identified certain Guarantees that are embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments and other such agreements. Certain of the Guarantees reflected on Schedule H, if any, may have expired or no longer be enforceable. Thus, the Debtors reserve their rights to amend Schedule H to the extent that additional Guarantees are identified or such Guarantees are discovered to have expired or are unenforceable, or to contest the validity or enforceability of the Guarantees in another filing.

**Claims of Third-Party Related Entities**. Although the Debtors have made every effort to properly classify each claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated, and contingent or noncontingent, the Debtors have not been able to fully reconcile all payments made to certain third parties and their related entities on account of the Debtors' obligations to both such entity and its affiliates. Therefore, to the extent that the Debtors have classified their estimate of claims of a creditor as disputed, all claims of such creditor's affiliates listed in the Schedules and Statements shall similarly be considered as disputed, whether or not they are designated as such.

## SPECIFIC DISCLOSURES WITH RESPECT TO THE DEBTORS' STATEMENTS

**Statements Summary**. As part of their financial statement due diligence process, the Debtors, from time to time, analyze the book values of their assets to determine, with respect to any of their assets, whether all or part of an asset value would be impaired in accordance with GAAP. The Debtors have recently experienced significant write-offs of book values of certain assets, sometimes reducing book values of such assets to zero, due to the declining coal market in which the Debtors operate. Where book values of assets have been reduced to zero, such assets have not been included in these Statements.

**Statements, Part 1, Question 1 – Gross Revenue From Business**. The amount shown for year-to-date 2022 is for the period January 1, 2022 to May 31, 2022. Revenue from business for 2020 and 2021 is for the period of January 1 to December 31 of each year.

**Statements, Part 1, Question 2 – Non-Business Revenue**. The Debtors record a non-material amount of certain transactions as other income in their financial records. Such transactions have been included in the response to Statements, Part 1, Question 2. These transactions are not directly related to the sale of inventory from the Debtor's ordinary course business but are instead on account of revenue earned primarily from interest income, insurance proceeds, gain/loss on asset sales and various accounting true-ups.

The amount shown for year-to-date 2020 includes non-business revenue for the period of January 1, 2022 to May 31, 2022. Revenue from business for 2020 and 2021 is for the period of January 1 to December 31 of each year.

**Statements, Part 2, Question 3 – Payments and Transfers to Certain Creditors Within 90 Days**. The dates set forth in the "Dates" column relate to one of the following: (a) the date of a wire transfer; (b) the date of an "ACH" payment; or (c) the check date. In general, disbursements are made through TPC bank accounts and recorded to the proper entity with the liability through intercompany journal entries. For the purpose of this schedule, all of these payments are shown at the proper Debtor unless otherwise noted in the response of a particular Debtor's Statements, Part 2, Question 3. In addition to the payments disclosed in response to this Question, the Debtors periodically replenish "petty cash" working accounts held locally by some entities. Disbursements from these working accounts, held by various Debtors, to third party payees are included in this Question but the intercompany replenishment transactions are not. Payments to the Debtors' insiders, bankruptcy professionals, and intercompany transactions are not included in this Statements, Part 2, Question 3.

Additionally, creditors with aggregate 90-day payments below $6,825 are not included in Part 2, Question 3 (11 U.S.C. § 547(c)(9).).

**Statements, Part 2, Question 4 – Payments to Insiders**. The answer to Part 2, Question 4 is encompassed in Part 13, Question 30. Refer to this question for specific notes about payments to insiders.

**Statements, Part 2, Question 5 – Repossessions, Foreclosures and Returns**. The Debtors routinely return damaged, unsatisfactory or out-of-specification raw materials and other goods to vendors in the ordinary course of business. These ordinary course returns have not been listed in this Statements, Part 2, Question 5.

**Statements, Part 2, Question 6 – Setoffs**. For a discussion of setoffs incurred by the Debtors, refer to paragraph 22 of these Global Notes.

**Statements, Part 3 – Legal Actions or Assignments**. There may be pending litigation matters that are believed to have potential recoveries. The actual amount of these litigation matters is contingent on the outcome of the cases. The Debtors routinely participate in administrative actions and appeals with state agencies regarding permits in the ordinary course of their business and they have identified those administrative actions that were pending within one year of the Petition Date.

**Statements, Part 5 – Certain Losses**. Any claims for losses that do not exceed the various deductible amounts for certain casualty insurance policies maintained by the Debtors have been excluded from Statements, Part 5.

**Statements Part 6 – Certain Payments or Transfers**. The Debtors make *de minimis* sales to third parties for such items including, but not limited to, scrap metal, obsolete parts and supplies, and surplus inventory and equipment. These de minimis sales are not included in this Statements, Part 6.

**Statements, Part 10 – Off-Premises Storage**. The Debtors routinely store parts and supplies inventory as well as parts that are in the process of being repaired on the premises of third-party

vendors. Due to insufficient records some of these parts and supplies may not be included in Statements, Part 10.

**Statements, Part 11 – Property Held for Another**. The Debtor's hold raw material for a few vendors that is not listed on the Debtor's books and records. Thus, the value listed for this property is based on an estimated market value of the raw materials. In addition, the Debtors withhold or retain certain funds from employees for payment to certain governmental authorities. These funds are held in trust for turnover to the applicable governmental authority. Given that the Debtors do not retain control of such funds and such funds are not considered property of the Debtors' estates, amounts of such funds have not been listed under Statements, Part 11.

**Statements, Part 12, Questions 22-24 – Details About Environmental Information**. In some cases, statutory document retention periods have passed and environmental documents are no longer accessible. Further, some individuals who once possessed responsive information are no longer employed by the Debtors. For all these reasons, it may not be possible to identify and supply the requested information that is responsive to Statements, Part 12, Questions 22-24. The Debtors have devoted substantial internal and external resources to identifying and providing the requested information that is responsive for as many sites and proceedings as reasonably possible.

This response does not include sites or proceedings related to non-environmental laws such as occupational safety and health laws or transportation laws. The Debtors are legally required to make routine reports and submissions to regulatory agencies concerning discharges resulting from normal operations consistent with regulatory requirements, such as discharge monitoring reports, toxic release inventory submissions and submissions concerning air emissions. This response in this Statement is limited to identifying circumstances in which governmental agencies have alleged in writing that particular operations of the Debtors are in violation of environmental laws and proceedings that have resulted from alleged violations of environmental laws.

**Statements Part 13, Question 26 – Books, Records and Financial Statements**. The Debtors have shared books and records with bankruptcy professionals in relation its bankruptcy filing. Bankruptcy professionals in possession of the books and records of the Debtors are not listed under Part 13, Question 26c. In addition, bankruptcy professionals have been issued financial statements and are not listed under Part 13, Question 26d.

**Statements Part 13, Question 27 – Inventories**. The Debtors' policy concerning the counts of parts and supplies inventory does not include regular periodic counts of the entire inventory, and the last complete count of the entire inventory occurred in October 2017. Instead, cycle counts of portions of inventory are continuously taken. Thus, information concerning parts and supplies inventory counts are not included in the response to Statements Part 13, Question 27.

**Statements Part 13, Question 28 – Current Officers, Directors, Managing Members, Controlling Shareholders, etc.** Some of the Debtors' current and past employees hold a de minimums amount of equity. These individuals are not shown in response to Part 13, Question 28 due to a lack of materiality and the administrative burden of producing the list. In addition, individuals who hold profits interest do not show a percentage of interest.

**Statements Part 13, Question 30 – Payments, Distributions or Withdrawals to Insiders**.  Data shown for creditor TPC Pipeline Company LLC represents estimated payments made by TPC Group LLC on behalf of TPC Pipeline Company LLC.  For a further discussion of insiders of the Debtors, refer to paragraph 8 of these Global Notes.

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

TPC GROUP INC., et al.,
Debtors

**Exhibit 1**
**2019 – 2022 Property and Business Interruption Policies**

| Policy Number | Slip Lead | Underwriter(s) |
|---|---|---|
| ENMAB1900057 | Great Lakes Insurance SE | Munich Re<br>SCOR RE<br>Helvetia Insurance<br>ACT (AON Munich Re)<br>Hanover Re |
| ENMAB1900325 | Sompo International | Endurance American Specialty Insurance Company<br>Arch<br>ACT 9551 (Sompo International) |
| ENMAB1900324 | Lloyds Syndicate 1036 | Pioneer Specialty Insurance Company<br>QBE Insurance |
| ENMAB1900330 | Lloyds Syndicate 1084 | QBE Insurance<br>Barbican Insurance Group |
| ENMAB1900329 | Lloyds Syndicate 1306 | Starstone Specialty Insurance Company |
| ENMAB1900328 | Lloyds Syndicate 1301 | Starstone Specialty Insurance Company |
| ENMAB1900331 | HDI Global Specialty SE | Hanover Re |
| US00029102PR19A | XL Insurance America Inc. | XL Insurance America Inc. |
| OGD1218607 | HDI Global Specialty SE | HDI Global Specialty SE |
| 1000216557-10 | Liberty Surplus Insurance Corp. | Liberty Surplus Insurance Corp. |
| HO19ONS0BNQPG01 | Navigators Specialty Insurance Company | Navigators Specialty Insurance Company |
| AJG180662F19 | Lloyds of London | Validus Reinsurance Ltd |
| 80666484 | National Union Fire Insurance Company of PA | AIG |
| EPRN143333599 | ACE American Insurance Company | Starr Surplus Lines Insurance Company |
| 003684001 | Ironshore Specialty Insurance Company | Ironshore Specialty Insurance Company |
| 19SUFDH11357901 | Starr Surplus Lines Insurance Company | Samsung |

## Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals    12/15

Part 1:    **Summary of Assets**

1.   *Schedule A/B: Assets-Real and Personal Property* (Official Form 206A/B)

   1a. **Real property:**
     Copy line 88 from *Schedule A/B*................................................................................   $         **0.00**

   1b. **Total personal property:**
     Copy line 91A from *Schedule A/B*.............................................................................   $         **0.00**

   1c. **Total of all property:**
     Copy line 92 from *Schedule A/B*...............................................................................   $         **0.00**

Part 2:    **Summary of Liabilities**

2.   *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*..................................   $   **1,851,634,585.54**

3.   *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

   3a. **Total claim amounts of priority unsecured claims:**
     Copy the total claims from Part 1 from line 5a of *Schedule E/F*.............................................   $     **Unknown**

   3b. **Total amount of claims of nonpriority amount of unsecured claims:**
     Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*..............................   +$         **0.00**

4.   **Total liabilities** ...............................................................................................
   Lines 2 + 3a + 3b                  $   **1,851,634,585.54**

Fill in this information to identify the case:

Debtor name **Texas Olefins Domestic International Sales Corporation**

United States Bankruptcy Court for the: DISTRICT OF DELAWARE

Case number (if known) **22-10498**

☐ Check if this is an
amended filing

# Official Form 206A/B

## Schedule A/B: Assets - Real and Personal Property 12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest.
Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties
which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts
or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write
the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an
additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset
schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the
debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

**1. Does the debtor have any cash or cash equivalents?**

■ No. Go to Part 2.
☐ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

| Part 2: | Deposits and Prepayments |
|---|---|

**6. Does the debtor have any deposits or prepayments?**

■ No. Go to Part 3.
☐ Yes Fill in the information below.

| Part 3: | Accounts receivable |
|---|---|

**10. Does the debtor have any accounts receivable?**

■ No. Go to Part 4.
☐ Yes Fill in the information below.

| Part 4: | Investments |
|---|---|

**13. Does the debtor own any investments?**

■ No. Go to Part 5.
☐ Yes Fill in the information below.

| Part 5: | Inventory, excluding agriculture assets |
|---|---|

**18. Does the debtor own any inventory (excluding agriculture assets)?**

■ No. Go to Part 6.
☐ Yes Fill in the information below.

| Part 6: | Farming and fishing-related assets (other than titled motor vehicles and land) |
|---|---|

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No. Go to Part 7.

☐ Yes Fill in the information below.

## Part 7:    Office furniture, fixtures, and equipment; and collectibles

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

  ■ No. Go to Part 8.
  ☐ Yes Fill in the information below.

## Part 8:    Machinery, equipment, and vehicles

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

  ■ No. Go to Part 9.
  ☐ Yes Fill in the information below.

## Part 9:    Real property

**54. Does the debtor own or lease any real property?**

  ■ No. Go to Part 10.
  ☐ Yes Fill in the information below.

## Part 10:    Intangibles and intellectual property

**59. Does the debtor have any interests in intangibles or intellectual property?**

  ■ No. Go to Part 11.
  ☐ Yes Fill in the information below.

## Part 11:    All other assets

**70. Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

  ■ No. Go to Part 12.
  ☐ Yes Fill in the information below.

| Part 12: | Summary |
|---|---|

In Part 12 copy all of the totals from the earlier parts of the form

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $0.00 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. **Real property.** *Copy line 56, Part 9* .........................................................> | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $0.00 + 91b. | $0.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $0.00 |

Debtor name   **Texas Olefins Domestic International Sales Corporation**

United States Bankruptcy Court for the:   DISTRICT OF DELAWARE

Case number (if known)   **22-10498**

☐ Check if this is an amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property   12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☐ Yes. Fill in all of the information below.

**Part 1:**   List Creditors Who Have Secured Claims

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A<br>Amount of claim<br><br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim |
|---|---|---|---|
| **2.1**  **BANK OF AMERICA, N.A.**<br>Creditor's Name<br>**(SECURED ABL FACILITY)**<br>**135 S. LASALLE STREET**<br>**CHICAGO, IL 60603**<br>Creditor's mailing address<br><br>**JENNIFER.A.BUTLER@BAML.COM,**<br>**JOSEPH.R.PATTERSON@BAML.COM**<br><br>Creditor's email address, if known<br><br>**Date debt was incurred**<br><br>**Last 4 digits of account number**<br><br>**Do multiple creditors have an interest in the same property?**<br>■ No<br>☐ Yes. Specify each creditor, including this creditor and its relative priority. | Describe debtor's property that is subject to a lien<br>**INVENTORY AND ACCOUNTS RECEIVABLE**<br><br>Describe the lien<br><br>Is the creditor an insider or related party?<br>■ No<br>☐ Yes<br>Is anyone else liable on this claim?<br>☐ No<br>■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)<br><br>As of the petition filing date, the claim is:<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $105,500,000.00 | $325,042,181.90 |
| **2.2**  **CITIBANK, N.A.**<br>Creditor's Name<br>**(SECURED ABL FACILITY)**<br>**388 GREENWICH ST**<br>**NEW YORK, NY 10013**<br>Creditor's mailing address<br><br>Creditor's email address, if known<br><br>**Date debt was incurred**<br><br>**Last 4 digits of account number** | Describe debtor's property that is subject to a lien<br>**INVENTORY AND ACCOUNTS RECEIVABLE**<br><br>Describe the lien<br><br>Is the creditor an insider or related party?<br>■ No<br>☐ Yes<br>Is anyone else liable on this claim?<br>☐ No<br>■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | $105,500,000.00 | $325,042,181.90 |

**Do multiple creditors have an interest in the same property?**

☑ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.3 | **DEUTSCHE BANK AG** | | | |

Creditor's Name

**(SECURED ABL FACILITY)**
**60 WALL STREET**
**NEW YORK, NY 10005**

Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**

**Last 4 digits of account number**

**Describe debtor's property that is subject to a lien**
**INVENTORY AND ACCOUNTS RECEIVABLE**

$105,500,000.00    $325,042,181.90

**Describe the lien**

**Is the creditor an insider or related party?**

☑ No
☐ Yes

**Is anyone else liable on this claim?**

☐ No
☑ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Do multiple creditors have an interest in the same property?**

☑ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.4 | **GOLDMAN SACHS BANK USA** | | | |

Creditor's Name

**(SECURED ABL FACILITY)**
**200 WEST STREET**
**NEW YORK, NY 10282**

Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**

**Last 4 digits of account number**

**Describe debtor's property that is subject to a lien**
**INVENTORY AND ACCOUNTS RECEIVABLE**

$105,500,000.00    $325,042,181.90

**Describe the lien**

**Is the creditor an insider or related party?**

☑ No
☐ Yes

**Is anyone else liable on this claim?**

☐ No
☑ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Do multiple creditors have an interest in the same property?**

☑ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.5 | **US BANK** | | | |

**Describe debtor's property that is subject to a lien**

$1,086,321,375.00    Unknown

---

Creditor's Name

**(10.5% SENIOR SECURED NOTES)**
**800 NICOLLET MALL**
**MINNEAPOLIS, MN 55402**

Creditor's mailing address

**ASSETS OF COMPANY**

Describe the lien

**Is the creditor an insider or related party?**
■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
☐ No

**Date debt was incurred**
■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

2.6 **US BANK**

Creditor's Name

**(10.875% PRIMING SECURED NOTES)**
**800 NICOLLET MALL**
**MINNEAPOLIS, MN 55402**

Creditor's mailing address

Describe debtor's property that is subject to a lien
**ASSETS OF COMPANY**

$237,813,210.54          Unknown

Describe the lien

**Is the creditor an insider or related party?**
■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
☐ No

**Date debt was incurred**
■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

2.7 **WELLS FARGO BANK, N.A.**

Creditor's Name

**(SECURED ABL FACILITY)**
**420 MONTGOMERY STREET**
**SAN FRANCISCO, CA 94104**

Creditor's mailing address

Describe debtor's property that is subject to a lien
**INVENTORY AND ACCOUNTS RECEIVABLE**

$105,500,000.00          $325,042,181.90

Describe the lien

**Is the creditor an insider or related party?**
■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**

---

**Date debt was incurred**

☐ No

☑ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**

☑ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

---

3.   Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.    **$1,851,634,585.54**

---

**Part 2:**   **List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to be notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| **GOLDBERG & KOHN, LLP**<br>**55 E MONROE ST STE 3300**<br>**CHICAGO, IL 60603** | Line **2.1** | |
| **GOLDBERG & KOHN, LLP**<br>**55 E MONROE ST STE 3300**<br>**CHICAGO, IL 60603** | Line **2.2** | |
| **GOLDBERG & KOHN, LLP**<br>**55 E MONROE ST STE 3300**<br>**CHICAGO, IL 60603** | Line **2.3** | |
| **GOLDBERG & KOHN, LLP**<br>**55 E MONROE ST STE 3300**<br>**CHICAGO, IL 60603** | Line **2.4** | |
| **GOLDBERG & KOHN, LLP**<br>**55 E MONROE ST STE 3300**<br>**CHICAGO, IL 60603** | Line **2.7** | |
| **HAYNES AND BOONE**<br>**P.O. BOX 841399**<br>**DALLAS, TX 75284-1399** | Line **2.1** | |
| **HAYNES AND BOONE**<br>**P.O. BOX 841399**<br>**DALLAS, TX 75284-1399** | Line **2.2** | |
| **HAYNES AND BOONE**<br>**P.O. BOX 841399**<br>**DALLAS, TX 75284-1399** | Line **2.3** | |
| **HAYNES AND BOONE**<br>**P.O. BOX 841399**<br>**DALLAS, TX 75284-1399** | Line **2.4** | |
| **HAYNES AND BOONE**<br>**P.O. BOX 841399**<br>**DALLAS, TX 75284-1399** | Line **2.7** | |

**PAUL HASTINGS LLP**
**LOCKBOX 4803**
**P.O. BOX 894803**
**LOS ANGELES, CA 90189-4803**

Line **2.6**

Debtor name **Texas Olefins Domestic International Sales Corporation**

United States Bankruptcy Court for the: **DISTRICT OF DELAWARE**

Case number (if known) **22-10498**

☐ Check if this is an amended filing

# Official Form 206E/F

# Schedule E/F: Creditors Who Have Unsecured Claims 12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

## Part 1: List All Creditors with PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

   ☐ No. Go to Part 2.

   ☑ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.

|  |  |  | Total claim | Priority amount |
|---|---|---|---|---|
| **2.1** | Priority creditor's name and mailing address<br>**AMERICAN CHEMISTRY COUNCIL**<br>**700 2ND STREET NE**<br>**WASHINGTON, DC 20002** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☑ Contingent<br>☑ Unliquidated<br>☑ Disputed | **Unknown** | **Unknown** |
| | Date or dates debt was incurred<br>**VARIOUS** | Basis for the claim:<br>**TAXING AUTHORITY** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8) | Is the claim subject to offset?<br>☑ No<br>☐ Yes | | |
| **2.2** | Priority creditor's name and mailing address<br>**AMERICAN FUEL &**<br>**PETROCHEMICAL MANUFACTUR**<br>**1800 M STREET, NW SUITE 900 NORTH**<br>**WASHINGTON, DC 20036-5802** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☑ Contingent<br>☑ Unliquidated<br>☑ Disputed | **Unknown** | **Unknown** |
| | Date or dates debt was incurred<br>**VARIOUS** | Basis for the claim:<br>**TAXING AUTHORITY** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8) | Is the claim subject to offset?<br>☑ No<br>☐ Yes | | |

| 2.3 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**BARBERS HILLS ISD**
**P.O. BOX 1108**
**MONT BELVIEU, TX 77580**

■ Contingent
■ Unliquidated
■ Disputed

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Is the claim subject to offset?

■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8)

---

| 2.4 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**BRAZORIA COUNTY TAX ASSESSOR-COLLECTOR**
**P.O. BOX 1586**
**LAKE JACKSON, TX 77566**

■ Contingent
■ Unliquidated
■ Disputed

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Is the claim subject to offset?

■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8)

---

| 2.5 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**CALCASIEU PARISH SHERIFF & TAX COLLECTOR**
**P.O. BOX 1450**
**LAKE CHARLES, LA 70602-1450**

■ Contingent
■ Unliquidated
■ Disputed

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Is the claim subject to offset?

■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8)

---

| 2.6 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**CHAMBERS COUNTY TAX COLLECTOR**
**P.O. BOX 519 405 S MAIN ST**
**ANAHUAC, TX 77514**

■ Contingent
■ Unliquidated
■ Disputed

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Is the claim subject to offset?

■ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8)

| 2.7 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **Unknown** | **Unknown** |
|---|---|---|---|---|

**CLEAR CREEK ISD TAX OFFICE**
**P.O. BOX 799**
**LEAGUE CITY, TX 77574-0799**

- ■ Contingent
- ■ Unliquidated
- ■ Disputed

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?
- ■ No
- ☐ Yes

---

| 2.8 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **Unknown** | **Unknown** |
|---|---|---|---|---|

**CT CORPORATION**
**P.O. BOX 4349**
**CAROL STREAM, IL 60197-4349**

- ■ Contingent
- ■ Unliquidated
- ■ Disputed

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?
- ■ No
- ☐ Yes

---

| 2.9 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **Unknown** | **Unknown** |
|---|---|---|---|---|

**CYPRESS-FAIRBANKS ISD TAX**
**ASSESSOR-COLLE**
**10494 JONES RD, SUITE 106**
**HOUSTON, TX 77065**

- ■ Contingent
- ■ Unliquidated
- ■ Disputed

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?
- ■ No
- ☐ Yes

---

| 2.10 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **Unknown** | **Unknown** |
|---|---|---|---|---|

**GALVESTON COUNTY TAX**
**COLLECTOR**
**722 MOODY**
**GALVESTON, TX 77550**

- ■ Contingent
- ■ Unliquidated
- ■ Disputed

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?
- ■ No
- ☐ Yes

| | | |
|---|---|---|
| 2.11 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |

**2.11** | Priority creditor's name and mailing address
**GOOSE CREEK CISD TAX SERVICES**
**P.O. BOX 2805**
**BAYTOWN, TX 77522**

As of the petition filing date, the claim is:
*Check all that apply.*

■ Contingent
■ Unliquidated
■ Disputed

**Unknown**  **Unknown**

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?

■ No
☐ Yes

---

**2.12** | Priority creditor's name and mailing address
**GREGG COUNTY TAX ASSESSOR-COLLECTOR**
**101 E METHVIN ST # 215**
**LONGVIEW, TX 75601**

As of the petition filing date, the claim is:
*Check all that apply.*

■ Contingent
■ Unliquidated
■ Disputed

**Unknown**  **Unknown**

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?

■ No
☐ Yes

---

**2.13** | Priority creditor's name and mailing address
**HARRIS COUNTY TAX ASSESSOR-COLLECTOR**
**P.O. BOX 799**
**LEAGUE CITY, TX 77574-0799**

As of the petition filing date, the claim is:
*Check all that apply.*

■ Contingent
■ Unliquidated
■ Disputed

**Unknown**  **Unknown**

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?

■ No
☐ Yes

---

**2.14** | Priority creditor's name and mailing address
**HARRIS GALVESTON SUBSIDENCE DISTRICT**
**1660 W BAY AREA BLVD**
**FRIENDSWOOD, TX 77546**

As of the petition filing date, the claim is:
*Check all that apply.*

■ Contingent
■ Unliquidated
■ Disputed

**Unknown**  **Unknown**

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.15 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**INTERNAL REVENUE SERVICES
DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
OGDEN, UT 84201-0012**

■ Contingent
■ Unliquidated
■ Disputed

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.16 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**JEFFERSON COUNTY TAX
ASSESSOR-COLLECTOR
P.O. BOX 2112
BEAUMONT, TX 77704-2112**

■ Contingent
■ Unliquidated
■ Disputed

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.17 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**LOUISIANA DEPARTMENT OF
ENVIRONMENTAL QU
P.O. BOX 82281
BATON ROUGE, LA 70884-2281**

■ Contingent
■ Unliquidated
■ Disputed

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.18 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**LOUISIANA DEPARTMENT OF
REVENUE
617 N 3RD ST
BATON ROUGE, LA 70802**

■ Contingent
■ Unliquidated
■ Disputed

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.19 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**PASADENA ISD**
**P.O. BOX 1318**
**PASADENA, TX 77501-1318**

■ Contingent
■ Unliquidated
■ Disputed

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.20 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**PINE TREE ISD**
**P.O. BOX 5878**
**LONGVIEW, TX 75608**

■ Contingent
■ Unliquidated
■ Disputed

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.21 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**PORT NECHES CITY OF**
**INDUSTRIAL DISTRICT**
**620 AVENUE C**
**PORT NECHES, TX 77651**

■ Contingent
■ Unliquidated
■ Disputed

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.22 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**SHELDON ISD - TAX COLLECTOR**
**11411 C.E. KING PARKWAY SUITE**
**A**
**HOUSTON, TX 77044-7192**

■ Contingent
■ Unliquidated
■ Disputed

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?
■ No
☐ Yes

| | | |
|---|---|---|
| 2.23 | Priority creditor's name and mailing address | **Unknown**      **Unknown** |

**SPRING BRANCH ISD TAX ASSESSOR/COLLECTOR**
**P.O. BOX 19037**
**HOUSTON, TX 77224-9037**

As of the petition filing date, the claim is:
*Check all that apply.*
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?
- ☑ No
- ☐ Yes

---

| | | |
|---|---|---|
| 2.24 | Priority creditor's name and mailing address | **Unknown**      **Unknown** |

**TEXAS CITY ISD**
**P.O. BOX 48**
**HOUSTON, TX 77001-0048**

As of the petition filing date, the claim is:
*Check all that apply.*
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?
- ☑ No
- ☐ Yes

---

| | | |
|---|---|---|
| 2.25 | Priority creditor's name and mailing address | **Unknown**      **Unknown** |

**TEXAS COMMISSION ON ENVIRONMENTAL QUALIT**
**P.O. BOX 13089**
**AUSTIN TX, TX 78711**

As of the petition filing date, the claim is:
*Check all that apply.*
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?
- ☑ No
- ☐ Yes

---

| | | |
|---|---|---|
| 2.26 | Priority creditor's name and mailing address | **Unknown**      **Unknown** |

**TEXAS COMPTROLLER OF PUBLIC ACCOUNTS**
**LYNDON B. JOHNSON STATE OFFICE BUILDING**
**111 EAST 17TH STREET**
**AUSTIN, TX 78774**

As of the petition filing date, the claim is:
*Check all that apply.*
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?
- ☑ No
- ☐ Yes

| 2.27 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**TEXAS DEPARTMENT OF STATE HEALTH SERVICE**
P.O. BOX 12190
AUSTIN TX, TX 78711

■ Contingent
■ Unliquidated
■ Disputed

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?

■ No
☐ Yes

| 2.28 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **Unknown** |
|---|---|---|---|---|

**U.S. CUSTOMS AND BORDER PROTECTION**
P.O. BOX 530071
ATLANTA, GA 30353-0071

■ Contingent
■ Unliquidated
■ Disputed

Date or dates debt was incurred
**VARIOUS**

Basis for the claim:
**TAXING AUTHORITY**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?

■ No
☐ Yes

---

## Part 2:    List All Creditors with NONPRIORITY Unsecured Claims

3. **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

| 3.1 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | |
|---|---|---|---|

☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred ____

Last 4 digits of account number ____

Basis for the claim: _____

Is the claim subject to offset?  ☐ No  ☐ Yes

---

## Part 3:    List Others to Be Notified About Unsecured Claims

4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|

---

## Part 4:    Total Amounts of the Priority and Nonpriority Unsecured Claims

5. Add the amounts of priority and nonpriority unsecured claims.

| | | | Total of claim amounts |
|---|---|---|---|
| **5a. Total claims from Part 1** | 5a. | $ | **Unknown** |
| **5b. Total claims from Part 2** | 5b.  + | $ | **0.00** |
| **5c. Total of Parts 1 and 2** Lines 5a + 5b = 5c. | 5c. | $ | **0.00** |

**Fill in this information to identify the case:**

Debtor name    **Texas Olefins Domestic International Sales Corporation**

United States Bankruptcy Court for the:    DISTRICT OF DELAWARE

Case number (if known)    **22-10498**

☐ Check if this is an
amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases          **12/15**

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.   **Does the debtor have any executory contracts or unexpired leases?**
     ■ No. Check this box and file this form with the debtor's other schedules.  There is nothing else to report on this form.
     ☐ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal    Property* (Official Form 206A/B).

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|
| **2.1**   State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | |
| **2.2**   State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | |
| **2.3**   State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | |
| **2.4**   State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | |

Debtor name **Texas Olefins Domestic International Sales Corporation**

United States Bankruptcy Court for the: DISTRICT OF DELAWARE

Case number (if known) **22-10498**

☐ Check if this is an
amended filing

## Official Form 206H
## Schedule H: Your Codebtors                                          12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the
Additional Page to this page.

**1. Do you have any codebtors?**

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

■ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of
creditors, Schedules D-G.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule
on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| | Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|---|
| | **Name** | **Mailing Address** | **Name** | *Check all schedules that apply:* |
| 2.1 | **PORT NECHES FUELS, LLC** | **500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002** | **BANK OF AMERICA, N.A.** | ■ D __2.1__ <br> ☐ E/F ____ <br> ☐ G ____ |
| 2.2 | **PORT NECHES FUELS, LLC** | **500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002** | **CITIBANK, N.A.** | ■ D __2.2__ <br> ☐ E/F ____ <br> ☐ G ____ |
| 2.3 | **PORT NECHES FUELS, LLC** | **500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002** | **DEUTSCHE BANK AG** | ■ D __2.3__ <br> ☐ E/F ____ <br> ☐ G ____ |
| 2.4 | **PORT NECHES FUELS, LLC** | **500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002** | **GOLDMAN SACHS BANK USA** | ■ D __2.4__ <br> ☐ E/F ____ <br> ☐ G ____ |
| 2.5 | **PORT NECHES FUELS, LLC** | **500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002** | **US BANK** | ■ D __2.5__ <br> ☐ E/F ____ <br> ☐ G ____ |

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| 2.6 **PORT NECHES FUELS, LLC** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **US BANK** | ■ D __2.6__ ☐ E/F ____ ☐ G ____ |
| 2.7 **PORT NECHES FUELS, LLC** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **WELLS FARGO BANK, N.A.** | ■ D __2.7__ ☐ E/F ____ ☐ G ____ |
| 2.8 **TEXAS BUTYLENE CHEMICAL CORPORATION** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **BANK OF AMERICA, N.A.** | ■ D __2.1__ ☐ E/F ____ ☐ G ____ |
| 2.9 **TEXAS BUTYLENE CHEMICAL CORPORATION** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **CITIBANK, N.A.** | ■ D __2.2__ ☐ E/F ____ ☐ G ____ |
| 2.10 **TEXAS BUTYLENE CHEMICAL CORPORATION** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **DEUTSCHE BANK AG** | ■ D __2.3__ ☐ E/F ____ ☐ G ____ |
| 2.11 **TEXAS BUTYLENE CHEMICAL CORPORATION** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **GOLDMAN SACHS BANK USA** | ■ D __2.4__ ☐ E/F ____ ☐ G ____ |
| 2.12 **TEXAS BUTYLENE CHEMICAL CORPORATION** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **US BANK** | ■ D __2.5__ ☐ E/F ____ ☐ G ____ |
| 2.13 **TEXAS BUTYLENE CHEMICAL CORPORATION** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **US BANK** | ■ D __2.6__ ☐ E/F ____ ☐ G ____ |

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| 2.14 **TEXAS BUTYLENE CHEMICAL CORPORATION** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **WELLS FARGO BANK, N.A.** | ■ D  **2.7** ☐ E/F \_\_\_\_\_ ☐ G \_\_\_\_\_ |
| 2.15 **TP CAPITAL CORP.** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **BANK OF AMERICA, N.A.** | ■ D  **2.1** ☐ E/F \_\_\_\_\_ ☐ G \_\_\_\_\_ |
| 2.16 **TP CAPITAL CORP.** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **CITIBANK, N.A.** | ■ D  **2.2** ☐ E/F \_\_\_\_\_ ☐ G \_\_\_\_\_ |
| 2.17 **TP CAPITAL CORP.** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **DEUTSCHE BANK AG** | ■ D  **2.3** ☐ E/F \_\_\_\_\_ ☐ G \_\_\_\_\_ |
| 2.18 **TP CAPITAL CORP.** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **GOLDMAN SACHS BANK USA** | ■ D  **2.4** ☐ E/F \_\_\_\_\_ ☐ G \_\_\_\_\_ |
| 2.19 **TP CAPITAL CORP.** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **US BANK** | ■ D  **2.5** ☐ E/F \_\_\_\_\_ ☐ G \_\_\_\_\_ |
| 2.20 **TP CAPITAL CORP.** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **US BANK** | ■ D  **2.6** ☐ E/F \_\_\_\_\_ ☐ G \_\_\_\_\_ |
| 2.21 **TP CAPITAL CORP.** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **WELLS FARGO BANK, N.A.** | ■ D  **2.7** ☐ E/F \_\_\_\_\_ ☐ G \_\_\_\_\_ |

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| | *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|---|
| 2.22 | **TPC GROUP INC.** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **BANK OF AMERICA, N.A.** | ■ D  **2.1** ☐ E/F _____ ☐ G _____ |
| 2.23 | **TPC GROUP INC.** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **CITIBANK, N.A.** | ■ D  **2.2** ☐ E/F _____ ☐ G _____ |
| 2.24 | **TPC GROUP INC.** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **DEUTSCHE BANK AG** | ■ D  **2.3** ☐ E/F _____ ☐ G _____ |
| 2.25 | **TPC GROUP INC.** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **GOLDMAN SACHS BANK USA** | ■ D  **2.4** ☐ E/F _____ ☐ G _____ |
| 2.26 | **TPC GROUP INC.** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **US BANK** | ■ D  **2.5** ☐ E/F _____ ☐ G _____ |
| 2.27 | **TPC GROUP INC.** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **US BANK** | ■ D  **2.6** ☐ E/F _____ ☐ G _____ |
| 2.28 | **TPC GROUP INC.** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **WELLS FARGO BANK, N.A.** | ■ D  **2.7** ☐ E/F _____ ☐ G _____ |
| 2.29 | **TPC GROUP LLC** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **BANK OF AMERICA, N.A.** | ■ D  **2.1** ☐ E/F _____ ☐ G _____ |

▐ **Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| 2.30 **TPC GROUP LLC** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **CITIBANK, N.A.** | ■ D  **2.2** ☐ E/F ____ ☐ G ____ |
| 2.31 **TPC GROUP LLC** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **DEUTSCHE BANK AG** | ■ D  **2.3** ☐ E/F ____ ☐ G ____ |
| 2.32 **TPC GROUP LLC** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **GOLDMAN SACHS BANK USA** | ■ D  **2.4** ☐ E/F ____ ☐ G ____ |
| 2.33 **TPC GROUP LLC** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **US BANK** | ■ D  **2.5** ☐ E/F ____ ☐ G ____ |
| 2.34 **TPC GROUP LLC** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **US BANK** | ■ D  **2.6** ☐ E/F ____ ☐ G ____ |
| 2.35 **TPC GROUP LLC** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **WELLS FARGO BANK, N.A.** | ■ D  **2.7** ☐ E/F ____ ☐ G ____ |
| 2.36 **TPC HOLDINGS, INC.** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **BANK OF AMERICA, N.A.** | ■ D  **2.1** ☐ E/F ____ ☐ G ____ |
| 2.37 **TPC HOLDINGS, INC.** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **CITIBANK, N.A.** | ■ D  **2.2** ☐ E/F ____ ☐ G ____ |

**Additional Page to List More Codebtors**

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.

| | Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|---|
| 2.38 | **TPC HOLDINGS, INC.** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **DEUTSCHE BANK AG** | ■ D  2.3<br>☐ E/F _____<br>☐ G _____ |
| 2.39 | **TPC HOLDINGS, INC.** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **GOLDMAN SACHS BANK USA** | ■ D  2.4<br>☐ E/F _____<br>☐ G _____ |
| 2.40 | **TPC HOLDINGS, INC.** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **US BANK** | ■ D  2.5<br>☐ E/F _____<br>☐ G _____ |
| 2.41 | **TPC HOLDINGS, INC.** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **US BANK** | ■ D  2.6<br>☐ E/F _____<br>☐ G _____ |
| 2.42 | **TPC HOLDINGS, INC.** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **WELLS FARGO BANK, N.A.** | ■ D  2.7<br>☐ E/F _____<br>☐ G _____ |
| 2.43 | **TPC PHOENIX FUELS LLC** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **BANK OF AMERICA, N.A.** | ■ D  2.1<br>☐ E/F _____<br>☐ G _____ |
| 2.44 | **TPC PHOENIX FUELS LLC** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **CITIBANK, N.A.** | ■ D  2.2<br>☐ E/F _____<br>☐ G _____ |
| 2.45 | **TPC PHOENIX FUELS LLC** | 500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002 | **DEUTSCHE BANK AG** | ■ D  2.3<br>☐ E/F _____<br>☐ G _____ |

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| 2.46 | **TPC PHOENIX FUELS LLC** | **500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002** | **GOLDMAN SACHS BANK USA** | ■ D  **2.4** ☐ E/F _____ ☐ G _____ |
| 2.47 | **TPC PHOENIX FUELS LLC** | **500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002** | **US BANK** | ■ D  **2.5** ☐ E/F _____ ☐ G _____ |
| 2.48 | **TPC PHOENIX FUELS LLC** | **500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002** | **US BANK** | ■ D  **2.6** ☐ E/F _____ ☐ G _____ |
| 2.49 | **TPC PHOENIX FUELS LLC** | **500 DALLAS ST., SUITE 2000 HOUSTON, TX 77002** | **WELLS FARGO BANK, N.A.** | ■ D  **2.7** ☐ E/F _____ ☐ G _____ |

**Fill in this information to identify the case:**

| Debtor name | **Texas Olefins Domestic International Sales Corporation** |
|---|---|
| United States Bankruptcy Court for the: | DISTRICT OF DELAWARE |
| Case number (if known) | **22-10498** |

☐ Check if this is an amended filing

## Official Form 202
# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

■  *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

■  *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

■  *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

■  *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

■  *Schedule H: Codebtors* (Official Form 206H)

■  *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐  Amended *Schedule*

☐  *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☐  Other document that requires a declaration

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   **June 30, 2022**

X **/s/ Bart de Jong**
Signature of individual signing on behalf of debtor

**Bart de Jong**
Printed name

**Chief Financial Officer**
Position or relationship to debtor

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

TPC GROUP INC., *et al.*,

Debtors.[1]

Chapter 11

Case No. 22-10493 (CTG)

Jointly Administered

## STATEMENT OF FINANCIAL AFFAIRS FOR TEXAS OLEFINS DOMESTIC INTERNATIONAL SALES CORPORATION, (CASE NO. 22-10498)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: TPC Group Inc. (3618); TPC Holdings, Inc. (7380); TPC Group LLC (8313); Texas Butylene Chemical Corporation (7440); Texas Olefins Domestic International Sales Corporation (4241); TPC Phoenix Fuels LLC (9133); Port Neches Fuels, LLC (1641); and TP Capital Corp. (6248). Each Debtor's corporate headquarters and mailing address is 500 Dallas St., Suite 2000, Houston, Texas 77002.

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| TPC GROUP INC., *et al.*,[1] | § | Case No. 22-10493 (CTG) |
| | § | |
| Debtors. | § | (Jointly Administered) |

## GLOBAL NOTES AND STATEMENTS OF LIMITATIONS, METHODOLOGY, AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

TPC Group Inc. ("***TPC***") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "***Debtors***"), are filing their respective Schedules of Assets and Liabilities (the "***Schedules***") and Statements of Financial Affairs (the "***Statements***," and together with the Schedules the "***Schedules and Statements***") in the United States Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***"), pursuant to section 521 of title 11 of the United States Code (the "***Bankruptcy Code***"), and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").

These Global Notes and Statements of Limitations, Methodology, and Disclaimer Regarding the Debtors' Schedules and Statements (collectively, the "***Global Notes***") pertain to, are incorporated by reference in, and comprise an integral part of all of the Schedules and Statements. The Global Notes are in addition to the specific notes set forth below with respect to the Schedules and Statements (the "***Specific Notes***," and, together with the Global Notes, the "***Notes***"). These Notes should be referred to, and referenced in connection with, any review of the Schedules and Statements.

The Debtors' management prepared the Schedules and Statements with the assistance of their advisors and other employees. The Schedules and Statements are unaudited and subject to potential adjustment. In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of preparation. The Debtors' management team and advisors have made reasonable efforts to ensure that the Schedules and Statements are as accurate and complete as possible under the circumstances; however, subsequent information or discovery may result in material changes to the Schedules and Statements and errors or omissions

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: TPC Group Inc. (3618); TPC Holdings, Inc. (7380); TPC Group LLC (8313); Texas Butylene Chemical Corporation (7440); Texas Olefins Domestic International Sales Corporation (4241); TPC Phoenix Fuels LLC (9133); Port Neches Fuels, LLC (1641); and TP Capital Corp. (6248). Each Debtor's corporate headquarters and mailing address is 500 Dallas St., Suite 2000, Houston, Texas 77002.

may exist. Notwithstanding any such discovery, new information, or errors or omissions, the Debtors do not undertake any obligation or commitment to update the Schedules and Statements.

The Debtors reserve all rights to amend or supplement the Schedules and Statements and these Notes from time to time, in all respects, as may be necessary or appropriate, including the right to dispute or otherwise assert offsets or defenses to any claim reflected on the Schedules and Statements as to amount, liability, classification, identity of Debtor, or to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated." Furthermore, nothing contained in the Schedules, Statements, or Notes shall constitute a waiver of any of the Debtors' rights or an admission with respect to their chapter 11 cases, including any issues involving objections to claims, substantive consolidation, equitable subordination, defenses, characterization or recharacterization of contracts and leases, assumption or rejection of contracts and leases under the provisions of chapter 3 of the Bankruptcy Code, causes of action arising under the provisions of chapter 5 of the Bankruptcy Code, or any other relevant applicable laws to recover assets or avoid transfers.

Mr. Bart de Jong, the Debtors' Chief Financial Officer, has signed each of the Schedules and Statements. Mr. de Jong is an authorized signatory for each of the Debtors. In reviewing and signing the Schedules and Statements, Mr. de Jong necessarily has relied upon the efforts, statements, and representations of various personnel employed by the Debtors and their advisors. Mr. de Jong has not (and could not have) personally verified the accuracy of each statement and representation contained in the Schedules and Statements, including statements and representations concerning amounts owed to creditors, classification of such amounts, and creditor addresses.

## GLOBAL NOTES AND OVERVIEW OF METHODOLOGY

1. **Reservation of Rights**. Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, inadvertent errors or omissions may exist. The Debtors reserve the right to dispute, or to assert setoff or other defenses to, any claim reflected in the Schedules and Statements as to amount, liability, and classification. The Debtors also reserve all rights with respect to the values, amounts, and characterizations of the assets and liabilities listed in the Schedules and Statements. Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph. Notwithstanding the foregoing, the Debtors shall not be required to update the Schedules and Statements except as may be required by applicable law.

2. **Description of the Cases**. On June 1, 2022 (the "***Petition Date***"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Debtors' chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Rule 1015-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware.

On June 14, 2024, the United States Trustee for Region 3 appointed a committee of unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket No. 270]. No trustee or examiner has been appointed in these chapter 11 cases.

4.  **Basis of Presentation**.  For financial reporting purposes, the Debtors generally prepare consolidated financial statements, which include information for TPC Group, Inc. and its Debtor and non-Debtor affiliates.  The Schedules and Statements are unaudited and reflect the Debtors' reasonable efforts to report certain financial information of each Debtor on an unconsolidated basis.  These Schedules and Statements neither purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("*GAAP*"), nor are they intended to be fully reconciled with the financial statements of each Debtor. The Debtors used reasonable efforts to attribute the assets and liabilities, certain required financial information, and various cash disbursements to each particular Debtor entity.  Accordingly, the Debtors reserve all rights to supplement and amend the Schedules and Statements in this regard, including with respect to reallocation of assets or liabilities to any particular entity.

5.  **"As Of" Information Date.**  The asset information provided herein represents the data as of the close of business on May 31, 2022, except as otherwise noted. The liability information provided herein represents the data as of the Petition Date, except as otherwise noted. The Schedules and Statements reflect the Debtors' best effort to allocate the assets, liabilities, receipts, and expenses to the appropriate Debtor entity "as of" such dates.  In certain instances, the Debtors may have used estimates or pro-rated amounts where actual data as of the aforementioned dates was not available.

6.  **Accuracy**.  The financial information disclosed herein was not prepared in accordance with federal or state securities laws or other applicable non-bankruptcy law or in lieu of complying with any periodic reporting requirements thereunder.  Persons and entities trading in or otherwise purchasing, selling, or transferring the claims against or equity interests in the Debtors should evaluate this financial information in light of the purposes for which it was prepared.  The Debtors are not liable for and undertake no responsibility to indicate variations from securities laws or for any evaluations of the Debtors based on this financial information or any other information.

7.  **Net Book Value of Assets**.  Except as otherwise specifically noted, each asset and liability of each Debtor is shown on the basis of net book value of the asset or liability in accordance with such Debtor's accounting books and records. Therefore, unless otherwise specifically noted, the Schedules and Statements are not based upon any estimate of the current market values of the Debtors' assets and liabilities, which may not correspond to book values. It would be cost prohibitive and unduly burdensome to obtain current market valuations of the Debtors' property interests.  Except as otherwise noted, the Debtors' assets are presented, in detail, as they appear on the Debtors' accounting subledgers. As such, the detail may include error corrections and value adjustments (including negative values or multiple line items for an individual asset).

For financial reporting purposes, TPC prepares consolidated financial statements.  Unlike the consolidated financial statements, these Schedules and Statements, except as indicated

3

herein, reflect the assets and liabilities of each Debtor, including intercompany accounts which would be eliminated in TPC's consolidated financial statements. Accordingly, combining the assets and claims set forth in the Schedules and Statements of the Debtors would result in amounts that would be substantially different from financial information for TPC and its respective consolidated subsidiaries that would be prepared under GAAP. Therefore, these Schedules and Statements do not purport to represent financial statements prepared in accordance with GAAP, nor are they intended to reconcile to the financial statements prepared by TPC.

Book values of assets prepared in accordance with GAAP generally do not reflect the current performance of the assets and may differ materially from the actual value and/or performance of the underlying assets. Because the book values of assets may materially differ from their fair market values, some assets are listed in undetermined amounts as of May 31, 2022. Assets that have been fully depreciated or fully amortized, or were expensed for GAAP accounting purposes, have no net book value and are, therefore, not included in the Schedules and Statements.

8. **Estimates and Assumptions**. The preparation of the Schedules and Statements required the Debtors to make certain estimates and assumptions that affected the reported amounts of assets and liabilities, the disclosures of contingent assets and liabilities, and the reported amounts of revenues and expenses. Actual results could differ materially from these estimates.

9. **Liabilities**. The Debtors have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between the prepetition and postpetition periods may change. Accordingly, the Debtors reserve all of their rights to amend, supplement, or otherwise modify the Schedules and Statements, as is necessary or appropriate.

The liabilities listed on the Schedules do not reflect any analysis of claims under section 503(b)(9) of the Bankruptcy Code. Accordingly, the Debtors reserve all of their rights to dispute or challenge the validity of any asserted claims under section 503(b)(9) of the Bankruptcy Code or the characterization of the structure of any such transaction or any document or instrument related to any creditor's claim. Although there are multiple holders of debt under the Debtors' prepetition funded indebtedness, only the administrative agent and indenture trustee, as applicable, have been listed in the Schedules.

10. **Application of Vendor Credits.** In the ordinary course of their businesses, the Debtors apply credits against amounts otherwise due to vendors (the "***Vendor Credits***"). The Vendor Credits arise because, among other matters, (i) materials ordered and paid for may not be delivered, (ii) materials delivered may be damaged or unusable, and (iii) a vendor provided volume rebates and cash discounts. Certain of the Vendor Credits are subject to change. Vendor claims are listed at the amounts entered on the Debtors' books and records, which

may or may not reflect credits or allowances due from such creditors to the Debtors. The Debtors reserve all of their rights with respect to such credits and allowances.

11. **Claims**. The Debtors have not included "non-cash" accruals, i.e. accruals to recognize expense or liability over multiple periods where no specific obligation to perform is established, such as accruals to equalize lease payments, in the Schedules and Statements.

The Bankruptcy Court has authorized the Debtors, among other matters, to (i) pay certain prepetition wages, salaries, employee benefits and other related obligations, (ii) pay certain prepetition sales, use and other taxes, and (iii) pay certain vendors and lienholders. While the Debtors have made their best efforts to reflect the claims, by vendor, net of these various authorized payments as well as the Vendor Credits discussed above, the actual unpaid claims of creditors that may be allowed in these chapter 11 cases may differ from the amounts set forth in the Schedules and Statements. Moreover, the Debtors have not attempted to reflect any alleged recoupments in the claims of utility companies or other parties holding prepetition deposits that may assert (or have asserted) a recoupment right.

The Debtors reserve all rights (i) to amend or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including, without limitation, the right to amend the Schedules and Statements with respect to claim description or designation or the Debtors against which the claim is asserted; (ii) to dispute or otherwise to assert offsets or defenses to any claim reflected in the Schedules and Statements as to amount, liability, priority, status, or classification; and (iii) to designate subsequently any claim as "disputed," "contingent," or "unliquidated"; or to object to the extent, validity, enforceability, priority, or avoidability of any claim. Any failure to designate a claim in the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such claim or amount is not "disputed," "contingent," or "unliquidated." Listing a claim does not constitute an admission of liability by the Debtors against which the claim is listed or against any of the Debtors. Furthermore, nothing contained in the Schedules and Statements shall constitute a waiver of rights with respect to the Debtors' chapter 11 cases, including, without limitation, issues involving claims, substantive consolidation, defenses, equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers.

The claims listed on the Schedules do not reflect any analysis of claims under section 503(b)(9) of the Bankruptcy Code. Accordingly, the Debtors reserve all of their rights to dispute or challenge the validity of any asserted claims under section 503(b)(9) of the Bankruptcy Code or the characterization of the structure of any such transaction or any document or instrument related to any creditor's claim.

12. **Employee Claims.** The Bankruptcy Court entered a final order granting authority, but not requiring, the Debtors to pay prepetition employee wages, salaries, benefits and other related obligations. With the exception of any prepetition severance and paid time off obligations that are still owing under the Debtors' policies and applicable non-bankruptcy law, as applicable, the Debtors currently expect that most prepetition employee claims for

wages, salaries, benefits and other related obligations either have been paid or will be paid in the ordinary course of business and, therefore, the Schedules and Statements do not include such claims. The Debtors have not listed their regular payroll disbursements and employee expense reimbursements in Question 3 for the Statements.

13. **Excluded Assets and Liabilities**. The Debtors have excluded certain categories of assets and liabilities from the Schedules and Statements, including, without limitation, accrued salaries, employee benefit accruals, tax accruals, right of use lease assets, assets related to the amortization of intangibles, and assets with a net book value of zero. The Debtors have also excluded rejection damage claims of counterparties to executory contracts and unexpired leases that may or may not be rejected, to the extent such damage claims exist. For confidentiality reasons, the Debtors have not listed individual customer accounts receivable information. Total accounts receivable information for each Debtor has been listed as of May 31, 2022. In addition, certain immaterial assets and liabilities may have been excluded.

14. **Litigation.** Certain litigation actions (collectively, the "***Litigation Actions***") reflected as claims against a particular Debtor may relate to one or more of the other Debtors. The Debtors made reasonable efforts to accurately record the Litigation Actions in the Schedules and Statements of the Debtor that is the party to the Litigation Action. The inclusion of any Litigation Action in the Schedules and Statements does not constitute an admission by the Debtors of liability, the validity of any Litigation Action or the amount of any potential claim that may result from any claims with respect to any Litigation Action, or the amount and treatment of any potential claim resulting from any Litigation Action currently pending or that may arise in the future. As the Debtors continue to operate their business, additional Litigation Actions may arise as a result thereof. Accordingly, the Debtors reserve all of their rights to amend, supplement, or otherwise modify the Schedules and Statements, as is necessary or appropriate.

15. **Umbrella Agreements**. Certain contracts and leases listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors. Where relevant, such agreements have been listed in the Schedules and Statements of the Debtor entity that signed the original umbrella or master agreement. Other Debtors, however, may be liable together with such Debtor on account of such agreements and the Debtors reserve all rights to amend the Schedules and Statements to reflect changes regarding the liability of the Debtors with respect to such agreements, if appropriate.

16. **Guarantees**. The Debtors have made reasonable efforts to locate and identify guarantees and other secondary liability claims (collectively, the "***Guarantees***") in each of the executory contracts, unexpired leases, secured financings, debt instruments and other such agreements to which any Debtor is a party. Where Guarantees have been identified, they have been included in the relevant Schedule for the Debtor or Debtors affected by such Guarantees. The Debtors have placed the Guarantees on Schedule H for both the primary obligor and the guarantor of the relevant obligation. It is possible that certain Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments and other such agreements may have been inadvertently omitted. The Debtors

reserve their rights to amend the Schedules to the extent additional Guarantees are identified or such Guarantees are discovered to have expired or be unenforceable. Additionally, failure to list any Guarantees in the Schedules and Statements, including in any future amendments to the Schedules and Statements, shall not affect the enforceability of any Guarantees not listed.

17.  **Duplication**.  Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in multiple parts of the Statements and Schedules.  To the extent these disclosures would be duplicative, the Debtors have determined to only list such assets, liabilities, and prepetition payments once.

18.  **Claims Description**.  Schedules D and E/F permit each of the Debtors to designate a claim as "disputed," "contingent," and/or "unliquidated."  The Debtors reserve all of their rights to dispute, or assert offsets or defenses to, any claim reflected on their respective Schedules and Statements on any grounds, including liability or classification.  Additionally, the Debtors expressly reserve all of their rights to subsequently designate such claims as "disputed," "contingent" or "unliquidated."

19.  **Causes of Action**.  Despite making commercially reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action or potential causes of action against third-parties as assets in the Schedules and Statements, including, without limitation, causes of actions arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers.  The Debtors reserve all of their rights with respect to any cause of action (including avoidance actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (collectively, "*Causes of Action*") they may have, and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any claims or Causes of Action or in any way prejudice or impair the assertion of such claims or Causes of Action.

20.  **Confidentiality**.  There may be instances where certain information was not included or redacted due to the nature of an agreement between a Debtor and a third party, concerns about the confidential or commercially sensitive nature of certain information, or to protect the privacy of an individual.

21.  **Employee Addresses.**  Current employee and director addresses have been reported as the Debtors' business address throughout the Schedules and Statements, where applicable.

22.  **Recharacterization.**  Listing (i) a claim on Schedule D as "secured," (ii) a claim on Schedule E/F as "priority," (iii) a claim on Schedule E/F as "unsecured," or (iv) a contract on Schedule G as "executory" or "unexpired," does not constitute an admission by the

Debtors of the legal rights of the claimant or a waiver of the Debtors' rights to recharacterize or reclassify such claims or contracts or to setoff of such claims. Notwithstanding the Debtors' commercially reasonable efforts to characterize, classify, categorize, or designate properly certain claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements, the Debtors may nevertheless have improperly characterized, classified, categorized, designated, or omitted certain items due to the complexity and size of the Debtors' business. Accordingly, the Debtors reserve all of their rights to recharacterize, reclassify, recategorize, redesignate, add, or delete items reported in the Schedules and Statements at a later time as is necessary or appropriate as additional information becomes available, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition. Disclosure of information in one or more Schedules, one or more Statements, or one or more exhibits or attachments to the Schedules and Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits, or attachments.

23. **Insiders.** For purposes of the Schedules and Statements, the Debtors defined "insiders" as such term is defined in section 101(31) of the Bankruptcy Code. Persons listed as "insiders" have been included for informational purposes only and the inclusion of them in the Schedules and Statements shall not constitute an admission that such persons are insiders for purposes of section 101(31) of the Bankruptcy Code. Moreover, the Debtors do not take any position with respect to: (i) any insider's influence over the control of the Debtors; (ii) the management responsibilities or functions of any such insider; (iii) the decision making or corporate authority of any such insider; or (iv) whether the Debtors or any such insider could successfully argue that he or she is not an "insider" under applicable law or with respect to any theories of liability or for any other purpose.

24. **Intellectual Property Rights.** Exclusion of any intellectual property shall not be construed as an admission that such intellectual property rights have been abandoned, terminated, assigned, expired by their terms, or otherwise transferred pursuant to a sale, acquisition, or other transaction.

25. **Summary of Significant Reporting Policies**. The following is a summary of significant reporting policies:

- Underdetermined Amounts. The description of an amount as "unknown," "TBD" or "undetermined" is not intended to reflect upon the materiality of such amount.

- Totals. All totals that are included in the Schedules and Statements represent totals of all known amounts. To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total.

- Paid Claims. The Debtors were authorized (but not directed) to pay certain outstanding prepetition claims pursuant to various orders entered by the Bankruptcy Court. The Debtors reserve all of their rights to amend or supplement the Schedules and Statements or take other action as is necessary or appropriate to avoid

overpayment of, or duplicate payments for, any such liabilities. Please see the notes to Schedule E/F for any additional information.

- <u>Liens</u>. Property and equipment listed in the Schedules and Statements are presented without consideration of any liens that may attach (or have attached) to such property and equipment.

26. **<u>Currency</u>**. Unless otherwise indicated, all monetary amounts are stated in U.S. dollars.

27. **<u>Intercompany Payables and Receivables</u>**. Intercompany receivables/payables are set forth on Schedules A/B and E/F, respectively. The listing by the Debtors of any account between a Debtor and another affiliate, including between the Debtor and any disregarded or non-debtor affiliate, is a statement of what appears in the Debtors' books and records and does not reflect any admission or conclusion of the Debtors regarding the allowance, classification, characterization, validity, or priority of such account. The Debtors take no position in these Schedules and Statements as to whether such accounts would be allowed as a claim, an interest, or not allowed at all. The Debtors and all parties in interest reserve all rights with respect to such accounts. The Debtors reserve all rights to recharacterize, reprioritize, reclassify, recategorize or redesignate intercompany accounts reported in the Schedules and Statements

28. **<u>Inventories, Property and Equipment</u>**. Inventories consist of material, supplies, raw materials and finished goods inventory. Finished goods inventories are valued at the lower of cost or net realizable value and all other inventory is carried at average cost. Finished goods inventory costs include labor, supplies, depletion of raw materials, operating overhead and transportation costs incurred prior to the transfer of title to customers. Property, plant, equipment is recorded at cost. Property, plant, and equipment are aggregated in the Debtors' books and records and cannot be segregated easily into the categories required by the Schedules and Statements. All inventories, as well as all property and equipment, are presented without consideration of any statutory or consensual liens.

29. **<u>Effect of "First Day" Orders</u>**. The Bankruptcy Court has authorized the Debtors to pay various outstanding prepetition claims including certain payments to employees, critical vendors, lien holders and taxing authorities. Where the Schedules and Statements list creditors and set forth the Debtors' scheduled amount of such claims, such scheduled amounts reflect amounts owed as of the Petition Date, adjusted for any postpetition payments made as of June 1, 2022 on account of such claims pursuant to the authority granted to the Debtors by the Bankruptcy Court. To the extent any further adjustments are necessary for any additional postpetition payments made after June 1, 2022 on account of such claims pursuant to the authority granted to the Debtors by the Bankruptcy Court, such adjustments have not been included in the Schedules and Statements unless otherwise noted on the applicable Schedule or Statement. Estimates of claims set forth in the Schedules and Statements may not reflect assertions by the Debtors' creditors of a right to have such claims paid or reclassified under the Bankruptcy Code or orders of the Bankruptcy Court.

30. **Setoffs**. The Debtors periodically incur certain setoffs in the ordinary course of business. Setoffs in the ordinary course can result from various items including, but not limited to, pricing discrepancies, returns, warranties, refunds, negotiations and/or disputes between Debtors and their customers regarding regulatory or governmental impositions costs incurred by Debtors, and other disputes between the Debtors and their customers and/or suppliers. These normal setoffs are consistent with the ordinary course of business in the Debtors' industry and can be particularly voluminous, making it unduly burdensome and costly for the Debtors to list such ordinary course setoffs. Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs are not independently accounted for, and as such, are or may be excluded from the Debtors' Schedules and Statements.

31. **Global Notes Control**. In the event that the Schedules and Statements differ from these Global Notes, the Global Notes shall control.

## SPECIFIC DISCLOSURES WITH RESPECT TO THE DEBTORS' SCHEDULES

**Schedules Summary**. Except as otherwise noted, the asset information provided herein represents the asset data of the Debtors as of May 31, 2022, and liability information provided herein represents the liability data of the Debtors as of the Petition Date.

For financial reporting purposes, the Debtors ordinarily prepare consolidated financial statements. Unlike the consolidated financial statements, the Schedules reflect the assets and liabilities of each Debtor on a nonconsolidated basis, except where otherwise indicated. Accordingly, the totals listed in the Schedules will likely differ, at times materially, from the consolidated financial reports prepared by the Debtors for financial reporting purposes or otherwise.

The Schedules do not purport to represent financial statements prepared in accordance with GAAP, nor are they intended to be fully reconciled with the financial statements of each Debtor. Additionally, the Schedules contain unaudited information that is subject to further review and potential adjustment and reflect the Debtors' reasonable best efforts to report the assets and liabilities of each Debtor on an unconsolidated basis. Moreover, given, among other things, the uncertainty surrounding the collection and ownership of certain assets and the valuation and nature of certain liabilities, to the extent that a Debtor shows more assets than liabilities, this is not an admission that the Debtor was solvent as of the Petition Date or at any time before the Petition Date. Likewise, to the extent a Debtor shows more liabilities than assets, this is not an admission that the Debtor was insolvent as of the Petition Date or at any time before the Petition Date.

As part of their financial statement due diligence process, the Debtors, from time to time, analyze the book values of their assets to determine, with respect to any of their assets, whether all or part of an asset value would be impaired in accordance with GAAP. Where book values of assets have been reduced to zero, such assets have not been included in the Schedules.

**Schedule A/B, Parts 1 and 2 – Cash and Cash Equivalents; Deposits and Prepayments**. Details with respect to the Debtors' cash management system and bank accounts are provided in the Debtors' Cash Management Motion and the interim order of the Bankruptcy Court granting the Cash Management Motion [Docket No. 9].

**Schedule A/B, Part 9 – Real Property**.  For those Debtors that own real property, such owned real estate is reported, except where otherwise noted, at book value.  The Debtors may have listed certain assets as real property when such assets are in fact personal property, or the Debtors may have listed certain assets as personal property when such assets are in fact real property.  Buildings and land improvements are listed on Schedule A/B, Part 9, independent of whether the real property to which the building or land improvement is connected is Debtor-owned property.  The Debtors reserve all of their rights to recategorize and/or recharacterize such assets holdings to the extent the Debtors determine that such holdings were improperly listed.

**Schedule A/B, Part 11 – All Other Assets**.  Dollar amounts are presented net of impairments and other adjustments.

In the ordinary course of their businesses, the Debtors may have accrued, or may subsequently accrue, certain rights to counter-claims, cross-claims, setoffs, credits, rebates, or refunds with their customers and suppliers, or potential warranty claims against their suppliers.  Additionally, certain of the Debtors may be party to pending litigation in which such Debtor has asserted, or may assert, claims as a plaintiff or counter-claims and/or cross-claims as defendant.  Because such claims are unknown to the Debtors and not quantifiable as of the Petition Date, they are not listed on Schedule A/B, Part 11.

The Debtors accumulated NOLs in fiscal years 2014 through 2020. For fiscal year 2021, the Debtors used a portion of those NOLs to cover taxes owed for that year. The NOLs for each fiscal year shown under Part 11, Question 72 are net of any used portion of the NOLs, not the original NOL that fiscal year.

The Debtors are pursuing claims under certain insurance policies related to the November 27, 2019 Port Neches incident. Such claims have not been quantified on the Schedules.  More information on such claims is available in Paragraph 52 of the Declaration of Robert A. Del Genio in Support of Debtors' Chapter 11 Petitions and First Day Motions [Docket No. 27].   See Exhibit 1 for associated insurance policies.

**Schedule D – Creditors Who Have Claims Secured by Property**.  Except as otherwise agreed pursuant to a stipulation, agreed order, or general order entered by the Bankruptcy Court, the Debtors reserve their right to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D of any Debtor.  Moreover, although the Debtors may have scheduled claims of various creditors as secured claims, the Debtors reserve their right to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument (including any intercompany agreement) related to such creditor's claim.  In certain circumstances, a Debtor may be a co-obligor or guarantor with respect to the scheduled claims of other Debtors, and no claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities.  The descriptions provided on Schedule D are intended only as a summary.  Reference to the applicable loan agreements and related documents is necessary for a complete description of

the collateral and the nature, extent and priority of any liens. Nothing in Schedule D and/or the Global Notes shall be deemed a modification or interpretation of the terms of such agreements.

Except as specifically stated herein, utility companies and other parties that may hold security deposits have not been listed on Schedule D. The Debtors reserve all of their rights, claims and causes of action with respect to claims associated with any contracts and agreements listed on Schedule D or Schedule G, including the right to dispute or challenge the characterization or the structure of any transaction, document or instrument (including any intercompany agreement) related to a creditor's claim. Nothing herein shall be construed as an admission by the Debtors of the legal rights of the claimant or a waiver of the Debtors' right to recharacterize or reclassify such claim or contract.

The Debtors have not included on Schedule D parties that may believe such claims are secured through setoff rights or inchoate statutory lien rights. Although there are multiple parties that hold a portion of the debt included in the secured facilities, only the administrative agents have been listed for purposes of Schedule D.

TPC has been granted postpetition financing pursuant to the *Interim Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 147] (Final Orders are pending). All of the other Debtors guarantee TPC's obligations under the DIP Facility.

The Secured ABL Facility's collateral listed in Schedule D, Part 1 reflects cash, inventory, and accounts receivable balances as of the May 31, 2022 balance sheet. The claim amount listed for both secured and unsecured notes in Schedule D, and in Schedule E/F, includes principal and interest as of the Petition Date.

**Schedule E/F, Part 1 – Creditors With Priority Unsecured Claims**. Pursuant to the *Interim Order (I) Authorizing Debtors to Pay Certain Prepetition Taxes and Assessments and (II) Granting Related Relief* [Docket No. 116] (the "***Interim Taxes Order***"), the Debtors have been granted the authority to pay certain tax liabilities that accrued prepetition. Accordingly, any priority unsecured claim based upon prepetition tax accruals that have been paid pursuant to the Interim Taxes Order are not listed on Schedule E/F. Certain of the tax claims may be subject to on-going audits, and the Debtors are otherwise unable to determine with certainty the amount of many, if not all, of the tax claims listed on Schedule E/F. Therefore, the Debtors have listed all such claims as undetermined in amount, pending final resolution of on-going audits or outstanding issues.

The Debtors believe that all of the employee claims entitled to priority under the Bankruptcy Code were or will be paid pursuant to the *Interim Order (I) Authorizing Debtors to (A) Pay Prepetition Wages, Salaries, Reimbursable Expenses, and Other Obligations on Account of Compensation and Benefits Programs and (B) Continue Compensation and Benefits Programs and (II) Granting Related Relief* [Docket No. 108]. Accordingly, no employee-related claims by and against the Debtors for prepetition amounts due have been included in Schedule E/F.

The listing of a claim on Schedule E/F, Part 1, does not constitute an admission by the Debtors that such claim or any portion thereof is entitled to priority status. The Debtors reserve the right to assert that any claim listed on Schedule E/F does not constitute a priority claim under the Bankruptcy Code.

**Schedule E/F, Part 2 – Creditors With Non-Priority Unsecured Claims**. The Debtors have made reasonable efforts to report all general unsecured claims against the Debtors on Schedule E/F, Part 2 based upon the Debtors' existing books and records. The claims of individual creditors for among other things, products, goods, or services are listed as either the lower of the amounts invoiced by the creditor or the amounts entered on the Debtors' books and records, and may not reflect credits or allowances due from such creditors to the Debtors. The Debtors reserve all rights with respect to any such credits and allowances including the right to assert claims objections and/or setoffs. The claims listed on Schedule E/F, Part 2, arose or were incurred on various dates. In certain instances, the date on which a claim arose is an open issue of fact. While commercially reasonable efforts have been made, determining the date upon which each claim in Schedule E/F was incurred or arose would be unduly burdensome and cost prohibitive and, therefore, the Debtors do not list a date for every claim listed on Schedule E/F.

Schedule E/F, Part 2, reflects certain prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption or assumption and assignment of an executory contract or unexpired lease. In addition, Schedule E/F, Part 2, does not include all claims that may arise in connection with the rejection of any executory contracts and unexpired leases that may be or have been rejected.

Schedule E/F, Part 2, does not include certain deferred charges, deferred liabilities, accruals or general reserves. Such amounts are general estimates of liabilities and do not represent specific claims as of the Petition Date; however, they are reflected on the Debtors' books and records as required in accordance with GAAP.

Schedule E/F contains information regarding pending litigation involving the Debtors. In certain instances, the Debtor that is subject of the litigation is uncertain or undetermined. Where the named defendant is "TPC Group Inc." plus "et al.," the Debtors have listed such claim on Schedule E/F of TPC. However, to the extent that litigation involving a particular Debtor has been identified, information regarding that litigation is contained in Schedule E/F for that Debtor. The amounts for these potential claims are listed as "undetermined" and are marked as contingent, unliquidated, and disputed in the Schedules and Statements.

**Schedule G – Executory Contracts and Unexpired Leases**. The businesses of the Debtors are complex. Although the Debtors' existing books, records, financial systems, and contracts management systems have been relied upon to identify and schedule executory contracts for each of the Debtors and reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors, omissions, or overinclusion may have occurred. The Debtors reserve all of their rights to dispute the validity, status or enforceability of any contracts, agreements, or leases set forth on Schedule G and to amend or supplement such Schedule, as necessary. The contracts, agreements, and leases listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers,

estoppels, certificates, letters, memoranda and other documents, instruments and agreements that may not be listed on Schedule G, despite the Debtors' use of reasonable efforts to identify such documents. In some cases, the same supplier or provider appears multiple times on Schedule G. This multiple listing is intended to reflect distinct agreements between the applicable Debtor and such supplier or provider. Certain of the real property leases listed on Schedule G may contain renewal options, guarantees of payments, options to purchase, rights of first refusal, rights to lease additional space and other miscellaneous rights. Such rights, powers, duties and obligations are not separately set forth on Schedule G. Certain of the agreements listed on Schedule G may be in the nature of conditional sales agreements or secured financings. The presence of a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease.

The Debtors have included only contracts and agreements to which a Debtor is a party. Schedule G does not include contracts or agreements in which payments to third parties were made on any of the Debtors' behalf for administrative convenience or as a result of the Debtors' cash management system. The Debtors have included certain interests in real property such as easements, rights of way, and other similar interests on Schedule G. The listing of such real property interests on Schedule G as "executory" does not constitute an admission by a Debtor that any such contract is executory. The Debtors reserve all rights to recategorize and/or recharacterize their interests in such real property at a later date, as necessary. The Debtors are continuing their review of all relevant documents and expressly reserve their right to amend all Schedules at a later time as necessary and/or to challenge the classification of any agreement as an executory contract or unexpired lease in any appropriate filing. The Debtors further reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on Schedule G, including the right to dispute or challenge the characterization or the structure of any transaction, document, or instrument (including any intercompany agreement) related to a creditor's claim.

In addition, the Debtors may have entered into various other types of agreements in the ordinary course of business, such as, supplemental agreements, amendments/letter agreements, title agreements, and confidentiality agreements. Such documents may not be set forth on Schedule G. Certain of the contracts, agreements and leases listed on Schedule G may have been entered into by more than one of the Debtors. Further, the specific Debtor obligor to certain of the executory contracts could not be specifically ascertained in every circumstance. In such cases, the Debtors made their best efforts to determine the correct Debtors' Schedule G on which to list such executory contract or unexpired lease. Certain of the executory contracts may not have been memorialized and could be subject to dispute. Each unexpired lease listed in Schedule G may include one or more ancillary documents, including but not limited to any underlying assignment and assumption agreements, amendments, supplements, full and partial assignments, renewals and partial releases. Executory contracts that are oral in nature, if any, have not been included on Schedule G. Schedule G does not constitute an admission that any such contract or agreement is an executory contract or unexpired lease. The Debtors reserve all of their rights, claims and causes of action with respect to the contracts and agreements listed on Schedule G, including the right to dispute or challenge the characterization or the structure of any transaction, document or instrument.

**Schedule H – Co-Debtors**. In the ordinary course of their business, the Debtors may be involved in pending or threatened litigation and claims arising out of certain ordinary business transactions.

These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross claims and counter-claims against other parties. Due to the volume of such claims, and because all such claims are contingent, unliquidated, and disputed, and listed elsewhere in the Schedules and Statements, such claims have not been set forth individually on Schedule H.

Schedule H reflects Guarantees, if any, by various Debtors of obligations of related affiliates. The Debtors may not have identified certain Guarantees that are embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments and other such agreements. Certain of the Guarantees reflected on Schedule H, if any, may have expired or no longer be enforceable. Thus, the Debtors reserve their rights to amend Schedule H to the extent that additional Guarantees are identified or such Guarantees are discovered to have expired or are unenforceable, or to contest the validity or enforceability of the Guarantees in another filing.

**Claims of Third-Party Related Entities**. Although the Debtors have made every effort to properly classify each claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated, and contingent or noncontingent, the Debtors have not been able to fully reconcile all payments made to certain third parties and their related entities on account of the Debtors' obligations to both such entity and its affiliates. Therefore, to the extent that the Debtors have classified their estimate of claims of a creditor as disputed, all claims of such creditor's affiliates listed in the Schedules and Statements shall similarly be considered as disputed, whether or not they are designated as such.

## SPECIFIC DISCLOSURES WITH RESPECT TO THE DEBTORS' STATEMENTS

**Statements Summary**. As part of their financial statement due diligence process, the Debtors, from time to time, analyze the book values of their assets to determine, with respect to any of their assets, whether all or part of an asset value would be impaired in accordance with GAAP. The Debtors have recently experienced significant write-offs of book values of certain assets, sometimes reducing book values of such assets to zero, due to the declining coal market in which the Debtors operate. Where book values of assets have been reduced to zero, such assets have not been included in these Statements.

**Statements, Part 1, Question 1 – Gross Revenue From Business**. The amount shown for year-to-date 2022 is for the period January 1, 2022 to May 31, 2022. Revenue from business for 2020 and 2021 is for the period of January 1 to December 31 of each year.

**Statements, Part 1, Question 2 – Non-Business Revenue**. The Debtors record a non-material amount of certain transactions as other income in their financial records. Such transactions have been included in the response to Statements, Part 1, Question 2. These transactions are not directly related to the sale of inventory from the Debtor's ordinary course business but are instead on account of revenue earned primarily from interest income, insurance proceeds, gain/loss on asset sales and various accounting true-ups.

The amount shown for year-to-date 2020 includes non-business revenue for the period of January 1, 2022 to May 31, 2022. Revenue from business for 2020 and 2021 is for the period of January 1 to December 31 of each year.

**Statements, Part 2, Question 3 – Payments and Transfers to Certain Creditors Within 90 Days**. The dates set forth in the "Dates" column relate to one of the following: (a) the date of a wire transfer; (b) the date of an "ACH" payment; or (c) the check date. In general, disbursements are made through TPC bank accounts and recorded to the proper entity with the liability through intercompany journal entries. For the purpose of this schedule, all of these payments are shown at the proper Debtor unless otherwise noted in the response of a particular Debtor's Statements, Part 2, Question 3. In addition to the payments disclosed in response to this Question, the Debtors periodically replenish "petty cash" working accounts held locally by some entities. Disbursements from these working accounts, held by various Debtors, to third party payees are included in this Question but the intercompany replenishment transactions are not. Payments to the Debtors' insiders, bankruptcy professionals, and intercompany transactions are not included in this Statements, Part 2, Question 3.

Additionally, creditors with aggregate 90-day payments below $6,825 are not included in Part 2, Question 3 (11 U.S.C. § 547(c)(9).).

**Statements, Part 2, Question 4 – Payments to Insiders**. The answer to Part 2, Question 4 is encompassed in Part 13, Question 30. Refer to this question for specific notes about payments to insiders.

**Statements, Part 2, Question 5 – Repossessions, Foreclosures and Returns**. The Debtors routinely return damaged, unsatisfactory or out-of-specification raw materials and other goods to vendors in the ordinary course of business. These ordinary course returns have not been listed in this Statements, Part 2, Question 5.

**Statements, Part 2, Question 6 – Setoffs**. For a discussion of setoffs incurred by the Debtors, refer to paragraph 22 of these Global Notes.

**Statements, Part 3 – Legal Actions or Assignments**. There may be pending litigation matters that are believed to have potential recoveries. The actual amount of these litigation matters is contingent on the outcome of the cases. The Debtors routinely participate in administrative actions and appeals with state agencies regarding permits in the ordinary course of their business and they have identified those administrative actions that were pending within one year of the Petition Date.

**Statements, Part 5 – Certain Losses**. Any claims for losses that do not exceed the various deductible amounts for certain casualty insurance policies maintained by the Debtors have been excluded from Statements, Part 5.

**Statements Part 6 – Certain Payments or Transfers**. The Debtors make *de minimis* sales to third parties for such items including, but not limited to, scrap metal, obsolete parts and supplies, and surplus inventory and equipment. These de minimis sales are not included in this Statements, Part 6.

**Statements, Part 10 – Off-Premises Storage**. The Debtors routinely store parts and supplies inventory as well as parts that are in the process of being repaired on the premises of third-party

vendors. Due to insufficient records some of these parts and supplies may not be included in Statements, Part 10.

**Statements, Part 11 – Property Held for Another**. The Debtor's hold raw material for a few vendors that is not listed on the Debtor's books and records. Thus, the value listed for this property is based on an estimated market value of the raw materials. In addition, the Debtors withhold or retain certain funds from employees for payment to certain governmental authorities. These funds are held in trust for turnover to the applicable governmental authority. Given that the Debtors do not retain control of such funds and such funds are not considered property of the Debtors' estates, amounts of such funds have not been listed under Statements, Part 11.

**Statements, Part 12, Questions 22-24 – Details About Environmental Information**. In some cases, statutory document retention periods have passed and environmental documents are no longer accessible. Further, some individuals who once possessed responsive information are no longer employed by the Debtors. For all these reasons, it may not be possible to identify and supply the requested information that is responsive to Statements, Part 12, Questions 22-24. The Debtors have devoted substantial internal and external resources to identifying and providing the requested information that is responsive for as many sites and proceedings as reasonably possible.

This response does not include sites or proceedings related to non-environmental laws such as occupational safety and health laws or transportation laws. The Debtors are legally required to make routine reports and submissions to regulatory agencies concerning discharges resulting from normal operations consistent with regulatory requirements, such as discharge monitoring reports, toxic release inventory submissions and submissions concerning air emissions. This response in this Statement is limited to identifying circumstances in which governmental agencies have alleged in writing that particular operations of the Debtors are in violation of environmental laws and proceedings that have resulted from alleged violations of environmental laws.

**Statements Part 13, Question 26 – Books, Records and Financial Statements**. The Debtors have shared books and records with bankruptcy professionals in relation its bankruptcy filing. Bankruptcy professionals in possession of the books and records of the Debtors are not listed under Part 13, Question 26c. In addition, bankruptcy professionals have been issued financial statements and are not listed under Part 13, Question 26d.

**Statements Part 13, Question 27 – Inventories**. The Debtors' policy concerning the counts of parts and supplies inventory does not include regular periodic counts of the entire inventory, and the last complete count of the entire inventory occurred in October 2017. Instead, cycle counts of portions of inventory are continuously taken. Thus, information concerning parts and supplies inventory counts are not included in the response to Statements Part 13, Question 27.

**Statements Part 13, Question 28 – Current Officers, Directors, Managing Members, Controlling Shareholders, etc.** Some of the Debtors' current and past employees hold a de minimums amount of equity. These individuals are not shown in response to Part 13, Question 28 due to a lack of materiality and the administrative burden of producing the list. In addition, individuals who hold profits interest do not show a percentage of interest.

**Statements Part 13, Question 30 – Payments, Distributions or Withdrawals to Insiders**.  Data shown for creditor TPC Pipeline Company LLC represents estimated payments made by TPC Group LLC on behalf of TPC Pipeline Company LLC.  For a further discussion of insiders of the Debtors, refer to paragraph 8 of these Global Notes.

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

TPC GROUP INC., et al.,
Debtors

**Exhibit 1**
**2019 – 2022 Property and Business Interruption Policies**

| Policy Number | Slip Lead | Underwriter(s) |
|---|---|---|
| ENMAB1900057 | Great Lakes Insurance SE | Munich Re<br>SCOR RE<br>Helvetia Insurance<br>ACT (AON Munich Re)<br>Hanover Re |
| ENMAB1900325 | Sompo International | Endurance American Specialty Insurance Company<br>Arch<br>ACT 9551 (Sompo International) |
| ENMAB1900324 | Lloyds Syndicate 1036 | Pioneer Specialty Insurance Company<br>QBE Insurance |
| ENMAB1900330 | Lloyds Syndicate 1084 | QBE Insurance<br>Barbican Insurance Group |
| ENMAB1900329 | Lloyds Syndicate 1306 | Starstone Specialty Insurance Company |
| ENMAB1900328 | Lloyds Syndicate 1301 | Starstone Specialty Insurance Company |
| ENMAB1900331 | HDI Global Specialty SE | Hanover Re |
| US00029102PR19A | XL Insurance America Inc. | XL Insurance America Inc. |
| OGD1218607 | HDI Global Specialty SE | HDI Global Specialty SE |
| 1000216557-10 | Liberty Surplus Insurance Corp. | Liberty Surplus Insurance Corp. |
| HO19ONS0BNQPG01 | Navigators Specialty Insurance Company | Navigators Specialty Insurance Company |
| AJG180662F19 | Lloyds of London | Validus Reinsurance Ltd |
| 80666484 | National Union Fire Insurance Company of PA | AIG |
| EPRN143333599 | ACE American Insurance Company | Starr Surplus Lines Insurance Company |
| 003684001 | Ironshore Specialty Insurance Company | Ironshore Specialty Insurance Company |
| 19SUFDH11357901 | Starr Surplus Lines Insurance Company | Samsung |

Debtor name    **Texas Olefins Domestic International Sales Corporation**

United States Bankruptcy Court for the:   DISTRICT OF DELAWARE

Case number (if known)   **22-10498**

☐ Check if this is an amended filing

# Official Form 207

## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy    04/22

**The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

### Part 1:   Income

1. **Gross revenue from business**

   ■ None.

   | Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
   |---|---|---|

2. **Non-business revenue**
   Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

   ■ None.

   | | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
   |---|---|---|

### Part 2:   List Certain Transfers Made Before Filing for Bankruptcy

3. **Certain payments or transfers to creditors within 90 days before filing this case**
   List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

   ■ None.

   | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>Check all that apply |
   |---|---|---|---|

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**
   List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

   ■ None.

   | Insider's name and address<br>Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
   |---|---|---|---|

5. **Repossessions, foreclosures, and returns**
   List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

■ None

| Creditor's name and address | Describe of the Property | Date | Value of property |
|---|---|---|---|

6. **Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

■ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|

**Part 3:**    **Legal Actions or Assignments**

7. **Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case**.**

■ None.

| Case title Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|

8. **Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

■ None

**Part 4:**    **Certain Gifts and Charitable Contributions**

9. **List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

■ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|

**Part 5:**    **Certain Losses**

10. **All losses from fire, theft, or other casualty within 1 year before filing this case.**

■ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br><br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br><br>List unpaid claims on Official Form 106A/B *(Schedule A/B: Assets – Real and Personal Property).* | Dates of loss | Value of property lost |
|---|---|---|---|

**Part 6:**    **Certain Payments or Transfers**

11. **Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

■ None.

| Who was paid or who received the transfer? Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|

**12. Self-settled trusts of which the debtor is a beneficiary**
List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

■ None.

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|

**13. Transfers not already listed on this statement**
List any transfers of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

■ None.

| Who received transfer? Address | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|

**Part 7:**    **Previous Locations**

**14. Previous addresses**
List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

■ Does not apply

| Address | Dates of occupancy From-To |
|---|---|

**Part 8:**    **Health Care Bankruptcies**

**15. Health Care bankruptcies**
Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

■ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|

**Part 9:**    **Personally Identifiable Information**

**16. Does the debtor collect and retain personally identifiable information of customers?**

■ No.
☐ Yes. State the nature of the information collected and retained.

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

■ No. Go to Part 10.
☐ Yes. Does the debtor serve as plan administrator?

**Part 10:**    **Certain Financial Accounts, Safe Deposit Boxes, and Storage Units**

**18. Closed financial accounts**
Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold,

moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

■ None

| Financial Institution name and Address | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

19. **Safe deposit boxes**
List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

■ None

| Depository institution name and address | Names of anyone with access to it Address | Description of the contents | Does debtor still have it? |
|---|---|---|---|

20. **Off-premises storage**
List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

■ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|

**Part 11:    Property the Debtor Holds or Controls That the Debtor Does Not Own**

21. **Property held for another**
List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

■ None

**Part 12:    Details About Environment Information**

For the purpose of Part 12, the following definitions apply:
*Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

*Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

*Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

22. **Has the debtor been a party in any judicial or administrative proceeding under any environmental law?** Include settlements and orders.

■  No.
☐  Yes. Provide details below.

| Case title Case number | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|

23. **Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

■  No.
☐  Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

■ No.
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

### Part 13: Details About the Debtor's Business or Connections to Any Business

**25. Other businesses in which the debtor has or has had an interest**
List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

■ None

| Business name address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|

**26. Books, records, and financial statements**
26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

■ None

| Name and address | Date of service<br>From-To |
|---|---|

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

■ None

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

■ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

| Name and address | |
|---|---|
| 26d.1. | **ALPHA TECHNICAL SERVICES CORPORATION**<br>**9590 NEW DECADE DRIVE**<br>**PASADENA, TX 77507** |
| 26d.2. | **AON CONSULTING INC**<br>**555 SAN FELIPE #1500**<br>**HOUSTON, TX 77056** |
| 26d.3. | **BASF NEDERLAND B.V.**<br>**GRONINGEMSOMGEL I**<br>**ARNHEM**<br>**6836 EA**<br>**THE NETHERLANDS** |

| Name and address |
| --- |

**26d.4.**    **BGN INTERNATIONAL DMCC**
**UNIT 1404, JTL REEF TOWER, JUMEIRAH LAKE**
**DUBAI**
**UNITED ARAB EMIRATES**

**26d.5.**    **BRASKEM NETHERLANDS BV**
**WEENA 240**
**ROTTERDAM**
**3013 NJ**
**THE NETHERLANDS**

**26d.6.**    **CANADIAN NATIONAL RAILWAY COMPANY**
**C.P. 11774, SUCC. CENTRE-VILLE**
**MONTREAL, QC H3C OA4**
**CANADA**

**26d.7.**    **CENTERPOINT ENERGY SERVICES, INC.**
**1111 LOUISIANA ST. #2045B**
**HOUSTON, TX 77002**

**26d.8.**    **CHEMIUM INTERNATIONAL CORP**
**3773 RICHMOND AVE, STE. 600**
**HOUSTON, TX 77046**

**26d.9.**    **CHEVRON PHILLIPS CHEMICAL COMPANY LP**
**10001 SIX PINES DR.**
**THE WOODLANDS, TX 77380**

**26d.10.**    **CITGO PETROLEUM CORPORATION**
**1293 ELDRIDGE PARKWAY**
**HOUSTON, TX 77077**

**26d.11.**    **DOW CHEMICAL COMPANY**
**2211 H.H. DOW WAY**
**MIDLAND, MI 48674**

**26d.12.**    **DUREZ CORPORATION**
**46820 MAGELLAN DRIVE, STE. C**
**NOVI, MI 48377**

**26d.13.**    **EASTMAN CHEMICAL COMPANY**
**200 SOUTH WILCOX DR.**
**KINGSPORT, TN 37660**

**26d.14.**    **ECOLAB INC.**
**1 ECOLAB PLACE**
**ST. PAUL, MN 55102**

**26d.15.**    **ENERGY TRANSFER**
**1300 MAIN STREET**
**HOUSTON, TX 77002**

**26d.16.**    **EXXONMOBIL CHEMICAL COMPANY**
**RUA COMENDADOR ARAUJO, 499**
**CURITIBA - PR**
**80420-000**
**BRAZIL**

**26d.17.**    **FLINT HILLS RESOURCES**
**4111 E. 3 71H STREET NORTH**
**WICHITA, KS 67220**

| Name and address |
| --- |

| 26d.18. | **FORMOSA PLASTICS CO., USA**<br>**9 PEACH TREE HILL RD.**<br>**LIVINGSTON, NJ 7039** |
| --- | --- |
| 26d.19. | **GAGE PRODUCTS**<br>**821 WANDA ST.**<br>**FERNDALE, MI 48220** |
| 26d.20. | **GREENBRIER LEASING**<br>**ONE CENTERPOINTE DR, STE. 200**<br>**LAKE OSWEGO, OR 97035** |
| 26d.21. | **HUNTSMAN INTERNATIONAL**<br>**10003 WOODLOCH FOREST DR.**<br>**THE WOODLANDS, TX 77380** |
| 26d.22. | **INEOS OLIGOMERS USA**<br>**2600 SOUTH SHORE BLVD, STE. 400**<br>**LEAGUE CITY, TX 77573** |
| 26d.23. | **INFINEUM**<br>**STRADA DI SCORRIMENTO, 2**<br>**VADO LIGURE (SV)**<br>**17047**<br>**ITALY** |
| 26d.24. | **INVISTA**<br>**4123 E. 37TH ST. NORTH**<br>**WICHITA, KS 67220** |
| 26d.25. | **IRVING OIL TERMINALS INC.**<br>**1 GERMAIN ST., BRUNSWICK SQUARE OFFICE,**<br>**SAINT JOHN, NB E2L 4V1**<br>**CANADA** |
| 26d.26. | **ISIS SOLUTIONS, INC.**<br>**2151 MICHELSON DR., STE. 142**<br>**IRVINE, CA 92612** |
| 26d.27. | **KOCH AG & ENERGY SOLUTIONS**<br>**4111 EAST 37TH ST. NORTH**<br>**WICHITA, KS 67220** |
| 26d.28. | **KOLMAR**<br>**10 MIDDLE STREET, PH**<br>**BRIDGEPORT, CT 6604** |
| 26d.29. | **LACC, LCC**<br>**840 GESSNER RD., STE. 300**<br>**HOUSTON, TX 77024** |
| 26d.30. | **MARSH USA INC.**<br>**500 DALLAS STREET, STE. 1500**<br>**HOUSTON, TX 77002** |
| 26d.31. | **MCGRIFF, SEIBELS, AND WILLIAMS OF TEXAS**<br>**10100 KATY FWY #400**<br>**HOUSTON, TX 77043** |
| 26d.32. | **MITSUBISHI INTERNATIONAL CORP NDA**<br>**1221 MCKINNEY STREET, STE. 3500**<br>**HOUSTON, TX 77010** |

| Name and address |
|---|
| 26d.33. | **MITSUI**<br>**1300 POST OAK BLVD**<br>**HOUSTON, TX 77056** |
| 26d.34. | **NATIONAL TANK & EQUIPMENT**<br>**501 INDEPENDENCE PKWY STE. A**<br>**DEER PARK, TX 77536** |
| 26d.35. | **NEXT WAVE**<br>**1000 LOUISIANA, STE. 5200**<br>**HOUSTON, TX 77002** |
| 26d.36. | **NORFOLK SOUTHERN CORPORATION**<br>**THREE COMMERCIAL PLACE**<br>**NORFOLK, VA 23510** |
| 26d.37. | **NOVA CHEMICALS, INC.**<br>**1555 CORAOPOLIS HEIGHTS RD.**<br>**MOON TOWNSHIP, PA 15108** |
| 26d.38. | **OCI METHANOL MARKETING, LLC**<br>**2800 POST OAK BLVD., STE. 3150**<br>**HOUSTON, TX 77056** |
| 26d.39. | **PHILLIPS 66 COMPANY**<br>**2331 CITYWEST BLVD.**<br>**HOUSTON, TX 77042** |
| 26d.40. | **POROCEL INDUSTRIES LLC**<br>**10300 ARCH STREET PIKE**<br>**LITTLE ROCK, AR 72206** |
| 26d.41. | **QATAR CHEMICAL & PETROCHEMICAL MARKETING**<br>**AL DANA TOWER, PO BOX 24445**<br>**WEST BAY**<br>**DOHA (MUNTAJAT)**<br>**QATAR** |
| 26d.42. | **RAIL LOGIX, LP**<br>**3330 S. SAM HOUSTON PKWY. E**<br>**HOUSTON, TX 77047** |
| 26d.43. | **REINHAUSEN MANUFACTURING INC.**<br>**2549 N 9TH AVE.**<br>**HUMBOLDT, TN 38343** |
| 26d.44. | **RYAN LLC**<br>**150 3RD AVENUE SOUTH, STE. 2020**<br>**NASHVILLE, TN 37201** |
| 26d.45. | **SASOL (USA) CORP.**<br>**12120 WICKCHESTER LANE**<br>**HOUSTON, TX 77079** |
| 26d.46. | **SHELL CHEMICAL LLP**<br>**150 N. DAIRY ASHFORD**<br>**HOUSTON, TX 77079** |
| 26d.47. | **SHELL TRADING (US) COMPANY**<br>**1000 MAIN STREET, LEVEL 12**<br>**HOUSTON, TX 77002** |
| 26d.48. | **SHINTECH, INC.**<br>**#3 GREENWAY PLAZA, STE. 1150**<br>**HOUSTON, TX 77046** |

| Name and address |
| --- |

**26d.49.**   SI GROUP, INC.
2750 BALLTOWN RD.
SCHENECTADY, NY 12301

**26d.50.**   SMBC RAIL SERVICES LLC
300 S RIVERSIDE PLAZA, STE. 1925
CHICAGO, IL 60606

**26d.51.**   TENASKA MARKETING VENTURES
14302 FNB PARKWAY
OMAHA, NE 68154

**26d.52.**   TEXAS AROMATICS
3555 TIMMONS LANE, STE. 700
HOUSTON, TX 77027

**26d.53.**   TRAFIGURA TRADING LLC
1401 MCKINNEY ST., STE 1500
HOUSTON, TX 77010

**26d.54.**   TRIBUTE ENERGY
2100 WEST LOOP SOUTH, STE. 1500
HOUSTON, TX 77027

**26d.55.**   VERSALIS SPA
PIAZZA BOLDRINI N.1
SAN DONATO, MILANESE
20097
ITALY

**26d.56.**   VINMAR INTERNATIONAL LTD.
16825 NORTHCHASE DR., STE. 1400
HOUSTON, TX 77060

**26d.57.**   ZXP TECHNOLOGIES LLC
409 E. WALLISVILLE RD.
HIGHLANDS, TX 77562

27. **Inventories**
Have any inventories of the debtor's property been taken within 2 years before filing this case?

■ No
☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
| --- | --- | --- |

28. **List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

■ No
☐ Yes. Identify below.

30. **Payments, distributions, or withdrawals credited or given to insiders**
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

■ No

☐ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ No

■ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|
| **TPC HOLDINGS, INC.** | **EIN:**  **61-1697380** |

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

■ No

☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the pension fund |
|---|---|

---

**Part 14:**   **Signature and Declaration**

**WARNING** -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **June 30, 2022**

**/s/ Bart de Jong**                                        **Bart de Jong**
Signature of individual signing on behalf of the debtor       Printed name

Position or relationship to debtor    **Chief Financial Officer**

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**
☐ No
■ Yes